**GUARANTY BANK OF OKLAHOMA CITY v. GALBREATH et al.**

No. 13108—Opinion Filed April 15, 1924.

1. **Execution — Appraisement — Requisites —Existing Liens.**

When appraisement has not been waived, section 698, Comp. Stat. 1921, requires appraisement of property on which execution is levied, and requires that the appraisement be made subject to existing liens, which shall be stated in the appraisement.

2. **Same—Recitals as to Delinquent Taxes.**

Where an appraisement of property on which execution has been levied shows taxes delinquent upon the property in an amount, including the actual amount of taxes extended against the property, together with the statutory penalty and costs, such appraisement is not, for that reason, erroneous, and does not constitute fraud; but is the proper means of showing the interest held in such property by the judgment debtor.

3. **Same—Validity of Sale.**

When property is sold under execution, subject to tax lien shown by the appraisement, and such amount of unpaid taxes as shown by the tax records, including penalty and costs, together with the amount bid and offered for the interest therein held by the judgment debtor, amounts to two-thirds of the value of the property as fixed in the appraisement, such aggregate of taxes, penalty and costs, and amount bid, satisfies the law requiring the property to sell for not less than two-thirds of the appraised value.

4. **Same—Effect of Purchaser Later Getting Reduction in Taxes.**

In the absence of fraud or collusion, where property is sold under execution, after appraisement, subject to tax liens as shown by the tax records, and the buyer, after sale, confirmation, and deed delivered, succeeds in getting the county commissioners to reduce the amount of taxes so that the amount bid and offered, together with the actual amount of taxes paid by the buyer, shall be less than two-thirds of the appraised value, the sale, confirmation, and deed are not subject to be set aside and canceled because the total of the bid and amount of taxes actually paid did not equal two-thirds of the appraised value of the property.

5. **Same—Sale and Judgment Sustained.**

Record examined, and held, that the order of confirmation of sheriff's sale was correct; and held, that the order and judgment of the court, refusing to set aside the sale and confirmation thereof, and to cancel the sheriff's deed, is amply supported by the record; and that the judgment of the trial court should be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Coal County; J. H. Linebaugh, Judge.

Action by the Guaranty Bank of Oklahoma City against Frank H. Galbreath et al., to set aside and vacate a sheriff's sale, order confirming the sale, and sheriff's deed made pursuant to the order of confirmation, growing out of a judgment and order of sale and sheriff's sale of certain property in a case wherein M. L. Lockwood and S. G. Lockwood were plaintiffs, and Robert Galbreath, Guaranty Bank of Oklahoma City, W. E. Thomas Lumber Company et al., were the defendants, and at which sale Frank H. Galbreath became the purchaser of the said property. Judgment against the Guaranty Bank denying the relief sought. The Guaranty Bank prosecutes appeal and makes Frank H. Galbreath, W. E. Thomas Lumber Company et al., defendants in error. Affirmed.

Everest, Vaught & Brewer, for plaintiff in error.

Reynolds & Williams and Watson, Gage &

Ess, for defendant in error W. E. Thomas Lumber Company.

Opinion by SHACKELFORD, C. This is a proceeding to vacate an order and judgment of the district court of Coal county confirming a judicial sale made by the sheriff of Coal county, and to set aside and cancel a sheriff's deed. A judgment was entered in a cause wherein M. L. Lockwood and S. G. Lockwood had sued Robert Galbreath, Guaranty State Bank of Oklahoma City, Moeschel Edwards Corrugating Company, A. H. Belo & Company, and W. E. Thomas Lumber Company. The plaintiffs and all the defendants other then Robert Galbreath were claiming liens on certain property of Robert Galbreath. The defendant W. E Thomas Lumber Company was asserting a material-man's lien, and the Guaranty Bank claimed under a mortgage. It is not important as to the other parties. The judgment was for W. E. Thomas Lumber Company in the sum of $4,526.12, and fixing the amount as a prior or first lien upon the property; and for the Guaranty Bank in the sum of $3,-109.30, and fixing the amount as a second or subsequent lien to that of W. E. Thomas Lumber Company upon the property, the property being described as follows:

"All that certain lot of land known as lot nine (9), in block forty-six (46), in the town of Bromide, Oklahoma, according to the record plat thereof, together with all improvements thereon, except the east thirty (30) feet of said lot."

The journal entry of judgment was filed October 5, 1916, and became final. On the 22nd of March, 1917, the court clerk of Coal county issued an order of sale directed to the sheriff of said county, directing him to advertise and sell the property after appraisement, as provided by law. Appraisers were appointed and under oath returned an appraisement fixing the value of the property at $20,000. It seems that the property was not offered for sale because of a defective description, and an alias order of sale was issued and the sheriff made return thereon that the sale was not made for the reason that nobody appeared and bid two-thirds of the appraised value. The W. E. Thomas Lumber Company moved to set aside the appraisement, which was done; and another order of sale was issued and the property appraised at $17,000, and for want of bids the order was returned without a sale being made; and an alias order of sale was again issued, and again returned without making sale, for want of bids. The lumber company moved to set aside the appraisement of $17,000, and the motion was sustained; and a new appraisement had fixing the value of the property at $11,000,

subject to taxes amounting to the sum of $4,510.98. A return of the order of sale was made on the 22nd of May, 1920, showing that the property had been sold to Frank N. Galbreath for the sum of $4,326.02. On the 1st of June, 1920, the W. E. Thomas Lumber Company filed its motion to confirm the sale, and an order of confirmation was filed on June 5, 1920, and sheriff's deed executed and delivered.

Some time in the early part of 1921, the plaintiff in error, Guaranty State Bank, filed a motion to vacate the order of the court confirming the sale and to cancel the sheriff's deed; and on the 11th of April, 1921, filed a motion for leave to withdraw the motion to vacate and substitute a petition, and leave being granted to file the petition in lieu of the motion, the petition to vacate the order of confirmation and cancel the sheriff's deed was filed April 25, 1921.

The petition seeks to set aside the sheriff's sale, the order of confirmation thereof, and to cancel the sheriff's deed made to Frank H. Galbreath for the reasons that the appraisement made was subject to taxes for the years 1915 to 1919 inclusive, amounting in the aggregate to $4,510.98, when in fact no such amount of taxes had been extended against said property, and that after the sale and deed made, the assessment upon the property was reduced and the taxes settled for $1,355.83, and that upon the sale the property did not sell for the amount equal to two-thirds of the appraised value and the sale was therefore void and all subsequent proceedings were void.

Frank H. Galbreath filed a demurrer to the petition which was overruled, and thereafter filed a general denial by way of answer, and also W. E. Thomas Lumber Company answered by general denial.

The case was tried on the 14th of September, 1921, resulting in a judgment denying the relief prayed for in the petition; and the Guaranty Bank appears and assigns as error: (1) The court erred in overruling the motion for new trial; (2) the court erred in not rendering judgment in favor of the plaintiff in error setting aside the sale and in refusing the relief prayed for; and (3) the decision of the court was against the weight of the evidence and was contrary to law. The plaintiff in error submits the whole matter upon two propositions:

"(1) A sale of property under execution, except in cases of foreclosure of mortgages where appraisement is waived, must be made upon appraisement, as upon a general execution, and at such sale the property must be sold for at least two-thirds of the appraised value or the sale is void."

"(2) Where, in the appraisement of property, allowance is made for an incumbrance upon or estate in the property which does not exist or which is materially overestimated, the levy and sale are void."

It seems to be conceded that under the statutes applicable to sales under execution, if the property sold for less than two-thirds of the appraised value the sale is void and the judgment should be reversed; but if the property sold for an amount equal to two-thirds of the appraised value thereof the judgment is correct and should be affirmed. Section 698, Comp. Stat. 1921, provides in proceedings under execution as follows:

"And if any of the lands and tenements of the debtor, which may be liable shall be incumbered by mortgage or any other lien or liens, such lands and tenements may be levied upon and appraised and sold, subject to such lien or liens, which shall be listed in the appraisement."

The proof offered in the trial showed that the property was appraised at $11,000 subject to the following taxes; 1915, $843.50; 1916, $667.20; 1917, $1,054.28; 1918, $1,141.-08; 1919, $750.17; total, $4,510.98. It appears, however, that the amount of taxes for each year as set out in the appraisement was estimated and included the actual amount of taxes extended against the property for each year, and the amount of penalty and costs computed thereon. It appears from the evidence that the actual amount of taxes extended against the property was a follow: 1915, $469.90; 1916, $419.-26; 1917, $758.50; 1918, $909.45; 1919, $709.-14, a total of $3246.25. The proof shows that the appraisers fixed the actual value of the property at $11,000 without any reference to the tax liens, i. e., they fixed the total value of the property at $11,000, and then showed in the appraisement that the property was subject to the tax liens. It is true that the tax books did not show the amount of taxes shown in the appraisement; but no contention is made that the estimates were wrong; and we take it that the estimates of the amount of taxes, penalty and costs, as shown in the appraisement, was substantially correct. But, even though the estimates were wrong, the fact remains that the property was subject to taxes amounting to $3.246.25 as shown by the tax books; and no part thereof had been paid prior to the sale complained of. If there had been no tax lien upon the property, for the sale to have been legal the property must have been sold for not less than $7,333.33, two-thirds of $11,000. The purchaser, however, was buying subject to the taxes extended against the property, amounting to $3,246.25, and bid and offered $4,326.02, making the total he should pay, purchase money and

taxes, $7,572.26, or more than two-thirds the total cash value as fixed by the appraisers, and also the fact remains that the buyer must take care of accruing penalties and costs amounting to substantially $1,250. Thus, the buyer was obligating himself to pay for the property an aggregate of his bid, taxes, penalty and costs, of $8,822, or the sum of approximately $1,488 more than would satisfy the requirements of the law that the property must sell for an amount equal to two-thirds of the appraised value of the interest to be sold. The sale was properly advertised and all parties interested had all the legal notice required by the law. This was the situation confronting the court upon the motion to confirm the sale. No objection to the confirmation of the sale was made upon the hearing had upon the motion. We think the order confirming the sale was correct.

In Alexander et al. v. American Nat. Bank, 54 Okla. 345, 153 Pac. 130, the property offered for sale was appraised at $12,000, subject to a mortgage of $2,000, and was sold for $7,000, and it was contended that the sale was void because the property did not sell for two-thirds of its appraised value. The court said:

"The property was sold for $7,000, which sum, it is urged, was less than two-thirds of the appraised value. To this we cannot agree. The return specifically shows that the total value of the property without regard to the mortgage was fixed at $12,000. It is stated in the return that there was a mortgage thereon for $2,000, subject to which the sale was to be made. This was the proper method under the statute by which the value of the interest of the mortgagor in the property was ascertained and estimated at $10,000. The statute contemplated the sale alone of the land subject to the mortgage, the equity of redemption, and this interest only was in fact sold. It brought $7,000, which was more than two-thirds of its appraised value. It is urged, however, by plaintiff in error, that under the provisions of the statute, the property must have brought upon the execution sale, two-thirds of the $12,000, the total appraised value of the property, exclusive of the mortgage, and to support this contention our attention is directed to the case of DeJarnette v. Varner, 40 Kan. 224, an action by a mortgagor of real property against the sheriff for damages for the sale of such property upon execution in a prior suit for less than two-thirds of its appraised value. In that case the property was appraised at $1,350, and sold subject to a supposed mortgage of $808, for $101. * * * In that case no mortgage in fact existed upon the property and no such appraisement was made as in the instant case. In our opinion, the provisions of the statute above quoted clear-

ly contemplate an appraisement and sale only of the rights and interests of the mortgagor debtor in the property subject to the mortgage, and that it is the duty of the appraisers to ascertain and estimate, as was done in this case, the value of such interest and that a valid sale thereof is had when such interest brings two-thirds of such appraised value. The provisions in the instant case were in this respect consonant with the statutory provisons and the sale is valid."

It is contended that the estimated taxes, penalty, and costs fixed in the appraisement constituted fraud; but we cannot adopt this view, as the estimate was substantially correct, and this was the manner of determining the interest in the property which the defendant Robert Galbreath owned and which was being offered for sale.

It is not seriously contended that if the buyer had been required to pay the amount of taxes, penalty, and costs as shown by the tax books at the time of the sale, that the sale and subsequent proceedings should be set aside. But in the trial upon this proceeding it was shown that after Frank H. Galbreath bought the property and the sale confirmed and the deed made, Frank H. Galbreath took the tax matter up with the county commissioners of Coal county and succeeded in getting them to reduce the assessment on the property for the years returned delinquent, and through that means succeeded in reducing the taxes to $1,275.02, which amount he paid; and that such sum, together with the amount bid, did not equal two-thirds of the appraised value of the property; and it is contended that for that reason the sale was void. We find ourselves unable to agree with any such contention. We think that the condition of the tax records at the time of the appraisement, sale, and confirmation was had, is controlling. If the sale was valid at the time made, the fact that the buyer later succeeded in getting the taxes cut down should not have the effect of rendering the sale invalid and void. It is not shown here that there was any understanding had with the commissioners of Coal county before the sale that the taxes would be reduced. If Frank H. Galbreath or anyone knew in advance of the sale that the taxes would be reduced, such knowledge is not disclosed by the record. So far as anything we know the matter was just as open to the plaintiff in error to buy the property and get the taxes reduced as it was to Frank H. Galbreath. It had the same legal notice of the sale that other interested parties had. We think that when Frank H. Galbreath bought the property he was buying subject to the tax liens as shown by the tax records and the county commission-

ers of Coal county might well have refused him any relief in the reduction of the taxes. Can it be said that if a piece of property appraised at $12,500, subject to a mortgage of $5,000, should sell for $5,000, or two thirds of the equity of the mortgagor, and the sale confirmed and a deed made, and afterwards the buyer should succeed in settling the mortgage debt for $2,500, that such settlement should vitiate his title acquired by the sale and confirmation because such buyer would then be out less than two-thirds of the appraised value of the property? We think not. It would make no difference whatever if the mortgagee should cancel the mortgage debt entirely.

We think the trial court was amply justified by this record in denying the relief sought. The judgment denying the relief prayed for was correct.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.