## HEWITT v. VOILS et al.

No. 19386. Opinion Filed March 3, 1931.

Joseph D. Mitchell, for plaintiff in error.

Hamilton, Gross & Howard and Gray & Palmer, for defendants in error.

KORNEGAY, J. It appears from the record in this case that the plaintiff in error was an Osage allottee, and that she had mortgaged the land that was sold in this case under a general execution issued against her to collect the amount of money judgment in the district court of Osage county, wherein the defendant Fred Voils was the plaintiff, and she was the defendant, and that her equity in the land was sold under the execution for $380, and the sale was confirmed over her objections.

To review the action of the court, this proceeding in error was brought. An inspection of the statute on the subject of appraisements of incumbered land seized on execution shows that the equity is what is appraised, and that two-thirds of the value of the equity would have to be bid before there could be a confirmation of the sale. The value of the equity in this case is $3,635.60.

This question has been before the court before. One of the cases in which the question was considered was Guaranty Bank of Oklahoma City v. Galbreath, 99 Okla. 9, 225

Pac. 971. That case probably might be referred to as authority for the position that if the purchase price of the equity added to the amount of the mortgage debt would amount to two-thirds of the value of the land, the equity could lawfully be sold for less than two-thirds of its value. The equity in that case was sold for two-thirds of its value.

The parent case, however, was the case of Alexander v. American National Bank, 54 Okla. 345, 153 Pac. 130. That case was considered by the Commissioners and they rendered an opinion, and the court adopted it, and on petition for rehearing they adhered to it. The third subdivision of the syllabus is as follows:

"3. Where, under the provisions of section 5156, R. L. 1910, execution is levied upon land incumbered by mortgage, it is the duty of the appraisers to estimate and return the value of the property subject to the mortgage, which is the value of the rights and interests of the mortgagor debtor in such property, which alone may be sold. A sale thereof for two-thirds or more of such appraised value is valid."

These authorities are sufficient, but the plain wording of the statute is unanswerable. In view of the fact that the judgment in this case on which the execution was issued has probably not been satisfied, we deem it necessary to decide another branch of the case.

It appears from the record that the judgment in this case was based on a replevin bond that was given before the certificate of competency was made and was signed before the certificate of competency was issued to the allottee.

We quote from the case-made, page 192, the following from the journal entry:

"In the District Court of Osage County, Oklahoma.

"Fred Voils, Plaintiff, v. Rosa Hewitt, now Borror, and Fred R. Williams, Defendants, No. 8850.

"Journal Entry.

"This case comes on for hearing upon the motion of the plaintiff to confirm the sale of certain real estate upon which an execution has been levied, and upon the objections filed to the confirmation and on motion to set aside sale by the defendant Rosa Hewitt, now Borror.

"The court finds that the defendant, Rosa Hewitt Borror, is a member of the Osage Tribe of Indians of one-eighth Indian blood; that, on the 5th day of September, 1917, she had issued to her by the Secretary of the Interior what is known as a certificate of competency; that, on the 22nd day of February, 1917, the defendant Rosa Hewitt, together with Fred R. Williams, executed a replevin bond in the sum of $2,000, in a case then pending in the district court of Osage county, wherein Rosa Hewitt was plaintiff and Fred Voils was defendant; that thereafter, and to-wit, on the 20th day of November, 1922, in said cause being No. 3612 in the district court of Osage county, state of Oklahoma, a judgment was rendered, wherein Fred Voils, the defendant in that case, was adjudged to be entitled to the possession of the property replevined, and said property was ordered returned to him, and in which judgment the court fixed the value of said property at the sum of $750, and awarded to the said Fred Voils the sum of $258 as damages by reason of the wrongful taking and detention of the property described in the replevin bond signed by Rosa Hewitt and Fred R. Williams.

"The court further finds that, on the 17th day of July, 1924, a suit was filed in the district court of Osage county, No. 8850, being the number of this case, wherein Fred Voils was plaintiff, and Rosa Hewitt Borror and Fred R. Williams were defendants, said suit being brought on the replevin bond executed in case No. 3612; that, on the 24th day of September, 1925, judgment was rendered against Fred R. Williams as surety on said bond in the sum of $900, and against Rosa Hewitt Borror, as principal, in the sum of $1,036.75 with 6 per cent. per annum interest on the judgment against Rosa Hewitt Borror from the 20th day of November, 1922, together with the costs; that, on the 10th day of March, 1926, an execution was issued in said cause, directing the sheriff to levy upon any property owned by the defendants Rosa Hewitt Borror and Fred R. Williams; that said execution was levied upon property owned by the defendant Rosa Hewitt Borror and certain property was sold under said execution on the 24th day of March, 1926; that thereafter a hearing was had upon a motion to confirm said sale and objections to the confirmation were by the court sustained; that, on the 3rd day of November, 1927, an execution was issued out of the office of the court clerk, and certain property owned by the defendant Rosa Hewitt Borror was levied upon and which was sold by the sheriff of this county on the 20th day of December, 1927, to one Fred R. Williams for the sum of $380, said property being a portion of what is referred to as the homestead allotment of Rosa Hewitt Borror, said property being sold subject to a mortgage of $5,000, together with accumulated interest in the sum of approximately $380, on certain property; that on the 9th day of November, 1927, the appraisers appointed returned their appraisement appraising the southwest quarter; the east half of the northwest quarter; and lot 1 of the northwest quarter of section 19, township

23, range 6, containing 159.04 acres at $1,-635.60, subject to a mortgage of $5,000.

"The court further finds that the total appraisement of said above-described tract would, in fact, be $6,635.60, and that the sum bid by said Fred Williams amounts to a bid of $5,769, which is approximately five-sevenths of the appraised value of said real estate.

"The court finds that, as a matter of law, the property of Rosa Hewitt Borror described in the notice of sale and sold is no portion of her homestead, under the homestead laws of the state of Oklahoma, and that, under the circumstances surrounding such indebtedness, it is not exempt from sale under the laws of the state of Oklahoma or the acts of Congress.

'The objection to the confirmation of the sale and the motion to set aside the sale will therefore be overruled and the motion to confirm the sale sustained.

"Jesse J. Worten,
"District Judge."

Section 2, par. 4, of the Act of Congress June 28, 1906 (34 Stat. 539, 540), with reference to the division of the tribal lands of the Osage Indians, is in part as follows:

"Each member of said tribe shall be permitted to designate which of his three selections shall be a homestead, and a certificate of allotment and deed shall designate the same as a homestead, and the same shall be inalienable and nontaxable until otherwise provided by Act of Congress."

A part of paragraph 7, sec. 2, of said act reads as follows:

"That the Secretary of the Interior, at his discretion, at the request and upon the petition of any adult member of the tribe, may issue to such member a certificate of competency, authorizing him to sell and convey any of the lands deeded to him by reason of this act, except his homestead, which shall remain inalienable and nontaxable for a period of 25 years, or during the life of the homestead allottee, if upon investigation, consideration, and examination of the request, he shall find any such member fully competent and capable of transacting his or her own business and caring for his or her own individual affairs: Provided, that upon the issuance of such certificate of competency, the lands of such member (except his or her homestead), shall become subject to taxation, and such member, except as herein provided, shall have the right to manage, control, and dispose of his or her lands the same as any citizen of the United States; Provided, that the surplus land shall be nontaxable for the period of three years from the approval of this act, except where certificates of competency are issued, or in case of the death of the allottee, unless otherwise provided by Congress."

On April 18, 1912, Congress passed another act with reference to the same subject which is as follows (37 Stat. 88, sec. 7):

"That the lands allotted to members of the Osage Tribe shall not in any manner whatsoever be incumbered, taken, or sold to secure or satisfy any debt or obligation contracted or incurred prior to the issuance of a certificate of competency, or removal of restrictions on alienation, nor shall the lands or funds of Osage tribal members be subject to any claim against the same arising prior to grant of a certificate of competency."

On March 3, 1921, Congress passed an act as follows (41 Stat. 1250, sec. 3):

"That all members of the Osage Tribe of Indians are hereby declared to be citizens of the United States, but this shall not affect their interest in tribal property, or the control of the United States over such property as is now or may hereafter be provided by law, and all restrictions against alienation of their allotment selections both surplus and homestead, of all adult Osage Indians of less than one-half Indian blood, are hereby removed, and the Secretary of the Interior shall, within four months after the passage of this act, determine what members of said tribe are of less than one-half Indian blood, and their ages, and his determination thereof shall be final and conclusive. The homestead allotment of the members of the Osage Tribe shall not be subject to taxation if held by the original allottee prior to April 8, 1931."

We do not think these acts of Congress permitted the sale on a general execution of lands of the Osage allottee in a case like this. The foundation of the judgment on which the execution issued in this case was a replevin bond made before the certificate of competency was issued. To allow this decision to stand would be to say that land that could not be sold for taxes, a debt to the state, for the protection of the landowner and the land, could be subject to sale at the suit of a private individual with no lien thereon, made by the allottee.

The cause should be reversed and remanded, with the directions to the lower court to set aside the order of confirmation and to make an order canceling the sheriff's deed, if one has been made, and to restore the possession of the lands to the plaintiff in error, in the event that she has been dispossessed of the land under the order of the court below. The cost of this proceeding in error will be taxed to the defendants in error.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.