MAGIC CITY AMUSEMENT CO. et al. v. HASTINGS et al.

No. 29611. June 17, 1941.

Rehearing Denied Sept. 9, 1941.

*116 P. 2d 709.*

Charles A. Holden and Charles A. Kothe, both of Tulsa, and Francis H. DeGroat, of Duluth, Minn., for plaintiffs in error.

Marshall & Cobb, John Wheeler, Bronse Hoover, Norton Standeven, Rogers, Stephenson & Dickason, John Rogers, T. Austin Gavin, Hunt & Eagleton, Arch K. Kriete, I. D. Moseley, and Conner & Winters, all of Tulsa, for defendants in error.

DAVISON, J. This appeal presents alleged error in the trial court's confirmation of a sheriff's sale in an action originally instituted December 16, 1931, by Exchange National Company and Exchange Trust Company to recover

judgment against Magic City Amusement Company and others in the principal sum of $288,400 upon promissory notes and to foreclose a real estate mortgage covering premises commonly known as "The Coliseum," in Tulsa, Okla.

The judgment thus sought was entered on April 26, 1932, and thereafter on February 26, 1938, assigned to the parties appearing herein as defendants in error. One of them, G. H. Galbreath, named in the assignment as "successor trustee of Clint Moore Trust" (assignee of a 590/2800 interest in the judgment), has been receiver of the property involved at all times since his appointment by the court on January 5, 1937.

The sale in question was held May 17, 1938, pursuant to an order of sale issued on a praecipe filed in the name of the above-mentioned trustee and the other assignees of the judgment. At said sale the assignees purchased the property for the sum of $150,000, and when they had filed their motion to confirm said sale the judgment debtors filed separate motions to vacate same, all of which asserted as grounds therefor: irregularity in the issuance, service and return of the order of sale; gross inequity in the amount of the bid; and misconduct on the part of the purchasers whereby bidders were induced to refrain, or discouraged from attending said sale and bidding thereat.

In its judgment sustaining the purchasers' motion to confirm the sale the court overruled the judgment debtors' motion to vacate same, and the latter have appealed therefrom, contending that said judgment is erroneous.

In our further reference to the two groups of parties to this appeal, their appellate designation of "appellants" and "appellees" will be used.

In stating their position herein, the appellants say they recognize that the inadequacy of the sum for which property is purchased at a foreclosure sale, in itself, does not constitute sufficient ground for vacating the sale, unless said price is so grossly inadequate as to shock the conscience of the court. It seems to be their view, however, that the present case comes within the rule expressed by some authorities to the effect that great inadequacy of price together with slight circumstances of unfairness in the conduct of the party benefited by the sale will be sufficient to justify setting it aside. The authorities cited recognize that in applying the rule each case must stand on its own particular facts, and the appellants apparently concede that its application is largely within the sound discretion of the trial court. Consequently, without expressly adopting or rejecting said rule, we will examine the facts and circumstances complained of herein to determine if the trial court in the present situation abused its discretion and committed error in confirming the sale in question.

In support of their argument, appellants allude to certain conduct of the appellees, especially of G. H. Galbreath, and to general economic conditions prevailing at the time of the sale.

With reference to the first point, our attention is first called to the fact that Galbreath, in his capacity as trustee of the Clint Moore Trust, was not only one of the joint purchasers of the property at the sheriff's sale, along with other assignees of the judgment, but that at the time of the sale he, as an individual, was the receiver of same. It is contended that these circumstances render applicable to the present case the rule stated in 53 C. J. 165, as follows:

"As a general rule, a receiver will not be permitted, as receiver, to purchase property from himself in his personal capacity, nor to acquire for his personal benefit, directly or indirectly, pending the receivership, any property committed to his custody or management, however free from fraud the transaction may be. . . ."

The underlying reason for the rule forbidding receivers, as well as fiduciaries and trustees in general, from purchasing from themselves is that in such a sale their interests as purchaser conflict with their interests as seller. As

pointed out in Turner v. Kirkwood, 49 F. 2d 590, there is no such conflict where a person acting in such a capacity purchases at a judicial or mortgage foreclosure sale. Such a person has no control over such a sale. It is conducted under order or decree of the court. A mortgage foreclosure sale is conducted exclusively by the sheriff, as the agent, officer or instrumentality, of the court. Title passes to the purchaser by sheriff's deed, rather than by any act or deed of the receiver, and in no respect can it be deemed a receiver's sale, nor one in which the receiver is the seller. As demonstrated in Turner v. Kirkwood, supra, there is no reason for holding such a sale invalid, where there is no fraud in connection therewith, and it is in all respects fairly conducted. The fact that in the present case, the praecipe for the order of sale was filed on behalf of Galbreath, trustee, along with the other assignees of the foreclosure judgment, has no bearing upon the matter. It is not shown to have given him such a part in bringing about or controlling the sale as to render same invalid. All of the cases from which the appellants quote excerpts in support of their position are distinguishable from the situation presented here. Appellees assert and the evidence tends to show that Galbreath was appointed receiver of the property by agreement and consent of counsel for the appellants. Such an appointment is not unlawful under our statutes. Section 774, O. S. 1931 · (12 Okla. St. Ann. § 1552) allows a party interested in an action to be appointed receiver by consent of the parties thereto. The undisputed evidence indicates that, at the time of Galbreath's appointment, the appellants knew that as trustee for the Clint Moore Trust he was the holder of some of the mortgage notes, but, as expressed by their counsel, they "felt it would be economy for him to act" in such capacity. In view of the facts of the present case, appellants' argument concerning Galbreath's dual capacity fails to demonstrate that the trial court erred in refusing to vacate the sale in question on the grounds of illegality, fraud, or unfairness.

It is further charged that what occurred at a certain meeting of Galbreath and the other assignees previous to the sale tended to "chill" the bidding at the sale. The evidence discloses that two or three weeks before the sale Galbreath, in his capacity of trustee, met with the other assignees of the judgment and it was then agreed that they would place a joint bid of $150,000 for the property at the sale. Appellants assert this was equivalent to "chilling" the bidding and ground for setting the sale aside. However, under the evidence and rule applicable thereto, we cannot so construe it. There is no proof that by said agreement any of the assignees bound themselves not to make independent bids of more than $150,000 or that competition was restrained or stifled so as to obtain the property at an inadequate price. By the weight of authority, agreements to unite in bidding at a judicial sale are not per se wrongful (31 Am. Jur. 448, sec. 95; 21 Am. Jur. 115, sec. 225; Hopkins v. Ensign, 122 N. Y. 144, 25 N. E. 306, 9 L. R. A. 731; Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868, 874) and in our opinion they, in themselves, should not furnish grounds for vacating such a sale in the absence of a showing of prejudice therefrom to the judgment debtors. Here, there is no such evidence.

The appellants' position thus resolves itself into the question of whether the sale price of $150,000 was, under the evidence in the present case, an inadequate price for the property. After an examination of the record we are unable to say that the judgment of the trial court is contrary to the evidence on this point. It is true that some of the testimony was to the effect that the property was worth approximately $300,000, but other testimony placed the value at $100,000 and $125,000. There was testimony concerning the assessment of the property in 1937 for $178,000 and it was shown that the property not only originally cost much more than $300,000 but that it was insured for $315,000. Such evidence is not conclusive of the value of the property at the time of the sale in question. Tax assessments on

property are not always less or equal to its market value and according to the testimony the cost of replacing property is the controlling factor in determining its insurable value. Other undisputed testimony tended to show that there had been a substantial depreciation in the market value of the property since the Magic City Amusement Company purchased the lots and the Coliseum building was erected thereon; that said building was what real estate dealers term a "one-purpose" building; that generally there is little market for such a building and that it would be no easy task to find a purchaser who would pay as much for same as did the appellees. Another undisputed fact which undoubtedly had a bearing upon the price which the property brought at the sale was that delinquent taxes in the sum of $58,725.46 had accrued against it and it was sold subject to said taxes.

In their argument concerning the conduct of the receiver, Galbreath, and the other appellees, as asserted ground for vacating the sale, counsel for appellants also refer to the fact that after the sale said receiver was able to satisfy $40,119 of the aforementioned tax indebtedness by payment of the sum of $12,700 of the funds he received as income from the property. Counsel seem to be of the opinion that the fact that Galbreath did not pay the taxes before the sale rather than allowing them to remain as an existing encumbrance against the property at the time of its sale furnished an additional reason for sustaining their motions to vacate. We cannot concur in this view. The receiver is not shown to have been in a position to make said payment or secure such an advantageous settlement of the taxes before the sale, and the fact that afterward the appellees were able to obtain such a settlement does not constitute proof that the sale price was inadequate. See Guaranty Bank of Oklahoma City v. Galbreath, 99 Okla. 9, 225 P. 971.

Appellants also seem to be of the opinion that the sale should have been vacated because the more than $27,000 by which the tax indebtedness on the property was reduced in the tax settlement effected by Galbreath was not credited on the deficiency judgment remaining against them after application of the sale price thereon. As to who is entitled to the benefit of any savings effected or funds collected during the receivership, we express no opinion. Galbreath has not been discharged as receiver, and the proceedings have not yet terminated, as shown by the following portion of the judgment entered:

"The court further finds that due to a lack of final determination of all questions arising in the receivership herein, execution and delivery of a deed to the purchasers should be withheld until the further order of this court, in order that there may be a full and complete settlement of all matters arising in the receivership and that meanwhile receiver should continue in the possession of said lands and premises."

Upon the authority of Suring State Bank v. Giese, 210 Wis. 489, 491, 246 N. W. 556, 85 A. L. R. 1477, appellants seem to be of the further opinion that the trial court should have granted them relief from the sale because of general economic conditions prevailing when same was held. They cite that case for the rule that when property fails to sell at a foreclosure sale for an adequate price, when the fact of an inadequate price is coupled with an emergency which prevents competitive bidding, it is within the power of a court of equity, without the aid of a statute, to decline confirmation of the sale or to grant the judgment debtors other described equitable relief. Appellants do not show that such a rule has ever been recognized by this court, and even so, the rule is not mandatory, but its operation or application is expressly placed within the discretion of the trial court.

In view of the foregoing, we are unable to say that the judgment of the trial court confirming the sale of the property in question to the appellees constituted an abuse of discretion or was erroneous in any of the particulars com-

plained of. Said judgment is therefore affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY and GIBSON, JJ., concur.