UNITED STATES of America, Plaintiff in Error,

v.

HOME FEDERAL SAVINGS & LOAN ASSOCIATION OF TULSA, a corporation, Alphonzo Williams, State of Oklahoma ex rel. Oklahoma Employment Security Commission, Evert Smith, d/b/a Asphalt Associates, D. E. Rigney and Estate of Eugene W. Reynolds, Defendants in Error.

Nos. 41347–41349.

Supreme Court of Oklahoma.

July 12, 1966.

Rehearing Denied Sept. 20, 1966.

Dissenting opinion.

For majority opinions, see 418 P.2d 319 and 418 P.2d 328.

LAVENDER, Justice (dissenting).

Although, in a proper case, I might agree with the principles of law expounded in the opinions of the majority in these three cases, I must respectfully dissent to such opinions.

The government contends that, under federal law as applied to these three cases, the federal tax liens are junior and inferior to the actual court costs, including the costs of execution sale, and to Rigney's judgment for $1,490.00 with interest thereon at the rate of six per cent per annum from August 31, 1960 to October 16, 1964, the date of the judgments in these cases, and to Home Federal's mortgage lien for principal with interest thereon to the date of the judgment in each case, but are superior to any lien for ad valorem taxes accrued after the filing of the notices of the federal tax liens, as well as to the judgment of the Oklahoma Employment Security Commission against Williams and to Home Federal's judgment against Williams for attorney's fees, abstract expenses and insurance premiums advanced, whereas, under Oklahoma law, any lien for ad valorem taxes would, except as to the court costs and costs of execution sale, be superior to the liens of all of the other defendants; and that therefore it is necessary as a prac-

tical matter in such cases to apply a "circular" priority to the sale proceeds so that the government will get its proper share of such proceeds.

It is necessary herein to clarify the government's "circular" priority theory. The application of such "circular" priority to the sale proceeds would be accomplished by first crediting to a special fund in which the government would have absolutely no interest whatsoever, but for bookkeeping purposes only, an amount equal to the sum of all of the claims which under federal law are superior to the federal tax liens, and then crediting any remainder of the sale proceeds to another special bookkeeping fund in which the government would have an interest to the extent of its federal tax liens; and then, after paying the federal tax liens and debiting the same against this last-mentioned special bookkeeping fund, applying the amount so credited to the first-mentioned special, non-federal, bookkeeping fund, together with any amount remaining to the credit of the last-mentioned special, bookkeeping fund, after such debit for the federal tax liens and interest thereon, in accordance with the priorities under Oklahoma law just as though the government had not been a party to any of the cases.

In this instance, under such "circular" priority theory and the government's contention concerning priorities with respect to the proceeds of the execution sales, if the property be sold to some one other than Home Federal, there would be credited to the first-mentioned special bookkeeping fund in which the government would have absolutely no interest whatsoever an amount equal to the sum of (a) the actual court costs, including the costs of the execution sale, in each case, and (b) the unpaid principal of Home Federal's note in each case with interest thereon to October 16, 1964, the date of Home Federal's judgment in that case, and (c) Rigney's judgment for $1,490.00 with interest thereon at the rate of six per cent per annum from August 31, 1960, to October 16, 1964. The government would have no interest in the proceeds of the execution sales unless such proceeds

exceeded the sum so credited to such special, non-federal, bookkeeping fund.

Home Federal points out that the amount of its bid in each of two of the cases was exactly equal to the special, non-federal, bookkeeping fund requirement with respect to Home Federal's principal and interest in the particular case, and the amount of its bid in the third case (No. 105,527 in the trial court) was exactly equal to the special, non-federal, bookkeeping fund requirement with respect to Home Federal's principal and interest in that case, plus $823.10, and that the $823.10 over and above the special fund requirements with respect to its principal and interest in the three cases would not even meet the balance required to be credited to such special, non-federal, bookkeeping fund, so that there would be nothing left to be credited to the other special bookkeeping fund in which the government, under such "circular" priority theory, would have an interest. Based thereon, Home Federal contends that, even under the government's "circular" priority theory, all questions presented by the government's appeal have become moot, as purely abstract or hypothetical questions.

In reply to this contention, the government contends that under the trial court's orders to sell the mortgaged properties subject to taxes and tax sales the amount of the unpaid ad valorem taxes against each tract became as much a part of the sale price of that property as the amount bid at the execution sale, and that, therefore, the questions presented by its appeal have not become moot.

It seems probable that the amount of ad valorem taxes paid by Home Federal on the mortgaged property involved in each case, as shown by a statement provided by the government and not disputed by Home Federal, would leave an amount, after providing for the actual court costs, including the costs of the execution sale, in that case, which, when added to the $823.10 paid into court by Home Federal in the one case, would exceed the remainder of the required credits to the special, non-federal, book-

keeping fund, so that under the government's contentions the questions presented by this appeal would not be moot. However, no statement concerning the court costs has been furnished to this court and it cannot be determined from the record before the court whether or not the sales proceeds, so augmented, would result in an excess over the requirements for the special, non-federal, bookkeeping fund.

Where, as in the present cases, real property is sold at execution sale, with appraisement, the pertinent statutes are 12 O.S.1961, §§ 751, 759 and 762.

12 O.S.1961, § 759 provides that:

"If execution be levied upon lands and tenements, the officer levying such execution shall call an inquest of three disinterested householders, who shall be resident within the county where the lands taken in execution are situate, and administer to them an oath, impartially to appraise the property so levied on, upon actual view; and such householders shall forthwith return to said officer, under their hands, an estimate of the real value of said property."

12 O.S.1961, § 751 provides in part that:

" * * * if any of the lands and tenements of the debtor which may be liable shall be incumbered by mortgage or any other lien or liens, such lands and tenements may be levied upon and appraised and sold, subject to such lien or liens, which shall be stated in the appraisement."

12 O.S.1961, § 762 provides in part that:

" * * * no such property shall be sold for less than two-thirds of the value returned in the inquest; * * *."

The only Oklahoma cases involving the adequacy of the amount bid at an execution sale where the real property involved in the sale was subject to an existing lien which was not involved in the action in which the sale was held, and wherein appraisement was not waived, are: Alexander v. American National Bank, 54 Okl. 345,

153 P. 130, cited by the government; Guaranty Bank of Oklahoma City v. Galbreath et al., 99 Okl. 9, 225 P. 971, also cited by the government; Hewitt v. Voils et al., 147 Okl. 270, 296 P. 447; and Miller et al. v. American Bank & Trust Co. of Ardmore, 171 Okl. 99, 40 P.2d 1074.

In all of these cases this court held in substance and effect that when land that is seized under execution is subject to a mortgage or other lien that was not involved in the action in which the execution was issued, and appraisement was not waived, it is only the judgment debtor's interest or "equity" in the seized property that is, or may be, sold under execution; that the value of the "equity" to be sold is determined by deducting the amount secured by such lien from the appraised gross value of the seized property; that the sale does not have to bring two-thirds of the appraised gross value of the seized property but only two-thirds of the value of the judgment debtor's "equity" in the seized property, as so determined; and that a bid of two-thirds of the value of such "equity" meets the requirements of the statute.

In addition to such holding, the opinion in Guaranty Bank of Oklahoma City v. Galbreath et al., supra, also holds, in the third paragraph of the syllabus, that:

"When property is sold under execution, subject to tax liens shown by the appraisement, and such amount of unpaid taxes as shown by the tax records, including penalty and costs, together with the amount bid and offered for the interest therein held by the judgment debtor, amounts to two-thirds of the value of the property as fixed in the appraisement, such aggregate of taxes, penalty and costs, and amount bid, satisfies the law requiring the property to sell for not less than two-thirds of the appraised value."

This quoted portion, in effect, treats the statute that now appears as 12 O.S.1961, § 762, supra, as requiring that the seized property, even though sold subject to an encumbrance, be sold for not less than two-thirds of the appraised gross value of the

seized property, contrary to the two-thirds of the value of the equity rule of Alexander et al. v. American National Bank, supra, cited with approval therein.

The quoted rule in the Guaranty Bank case would tend to support the government's position that when real property which is sold under execution is subject to unpaid taxes, the amount of such unpaid taxes is to be considered as much a part of the sale price of the property sold as the bid made at the sale. However, consideration of the entire opinion, and of the facts as set forth in the opinion, discloses that the bid at the sale was exactly two-thirds of the value of the judgment debtor's interest or equity in the seized property, as shown by the appraisement which was approved in the opinion, although the tax liability as shown in such appraisement turned out to be slightly lower than the tax liability as shown by the tax records, and that the quoted holding was entirely unnecessary to the conclusion reached in the opinion refusing to vacate the sale because the purchaser, after confirmation of the sale without any appeal therefrom and after receiving the sheriff's deed, succeeded in obtaining a reduction in the assessed valuation of the property for the tax years involved, with a consequent reduction in the tax liability for those years. In fact, this court was without jurisdiction to pass upon the question involved in the quoted holding because such question was not properly preserved for review by this court, for, like the question concerning the error in the appraisement as to the tax liability, it was involved in the confirmation of the sale and no appeal was taken from the order of confirmation.

The quoted paragraph of the syllabus to the Guaranty Bank case is treated by Shepard's Citator as being followed in Hewitt v. Voils et al., supra. Consideration of that opinion discloses that the court not only questioned that part of the Guaranty Bank case but in effect overruled it. See the first paragraph of the court's syllabus to the Hewitt case, which is based on the rule of Alexander et al. v. American National Bank, supra, the "parent" case on the subject of the adequacy of the bid when real property seized on execution is subject to a lien not involved in the action in which the execution was issued.

Therefore, under the Oklahoma decisions concerning land that is subject to a mortgage or other lien that was not involved in the action in which the execution was issued and appraisement was not waived, it is only the judgment debtor's interest or equity in the seized property that is, or may be, sold under such execution, and the value of the interest or equity to be sold under execution is determined by deducting the amount secured by such mortgage or other lien from the appraised gross value of the seized property. By definition, the amount of the mortgage or other lien is excluded from the value of the interest or equity which is to be sold and so cannot be considered as a part of the sale price, or proceeds, of the property that is sold under execution.

It is clear that the proceeds of the execution sales of the properties involved in these three cases were not sufficient to supply the amount required in these cases, under the government's "circular" priority theory, to be credited to the special, non-federal, bookkeeping fund, before the government, under such theory, could have any interest whatsoever in the proceeds of such sales. Consequently, as contended by Home Federal, all questions properly preserved for review by this court have become purely abstract or hypothetical questions, and the appeals have become moot and should be dismissed.

I do not believe this court has jurisdiction to determine the priority between the federal tax liens and the ad valorem tax lien, for the reason that the holder of the lien for ad valorem taxes was not made a party to the actions by Home Federal, and the government did not even ask that the holder of any such ad valorem tax lien be brought into the actions as a party thereto so that its claim of priority over such lien could be adjudicated. Also, it is noted that

the majority opinion in case number 41,348 in this court (district court case no. 105,-527) appears to treat the entire $823.10 paid into court by Home Federal to comply with its bid in that case as "residue" subject to further order of the trial court as provided in paragraph numbered "2" of its order concerning the proceeds of the execution sale. Such holding, in my opinion, is unnecessary to the conclusion reached in that opinion. Under the government's "circular" priority theory, the government has absolutely no interest in that $823.10, and, insofar as the government is concerned, it is immaterial what happens to that $823.10; not only the court costs, including the costs of the execution sale in that case, but also Home Federal's judgment against Williams for attorney's fee, abstract expense and insurance premium advanced in that case may be paid from that $823.10, and under paragraph numbered "1" of the trial court's order concerning the proceeds of the execution sale in that case must be paid from that $823.10 before there can be any "residue" to be affected by paragraph numbered "2," which is affirmed in such opinion.

I dissent to the majority opinions for the above reasons, and because I believe that under Oklahoma law the lien of unpaid ad valorem taxes is not, and cannot be, involved in such an action as is here presented, except in determining the value of the judgment debtor's interest or equity that is to be sold under execution to satisfy the judgment in such an action, and, as pointed out in the majority opinion in cases nos. 41,347 and 41,349, such lien remains as a lien against the real property until the taxes are paid to the county treasurer. The question of priority between the lien of unpaid ad valorem taxes and any other lien just does not exist, and, unless for some reason which would have no legal basis, the unpaid ad valorem taxes against the real property sold under execution are, under the court's order for distribution of the proceeds of the execution sale, to be paid from such proceeds, the question of priority cannot arise.