[Crim. No. 13611.    Second Dist., Div. One.    June 17, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. "L" "C" GARY, Defendant and Appellant.

. Lawrence A. Small, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jerold A. Prod, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with two counts of burglary (§ 459, Pen. Code), two counts of receiving stolen property (§ 496, Pen. Code) and one prior felony conviction (§ 666, subd. 3, Pen. Code). He and all counsel waived trial by jury of the cause and the prior; the judge found defendant guilty on the two burglary counts and acquitted him of receiving stolen property. Defendant's motion for new trial was denied and the prior conviction was found to be true; he appeals from the judgment.

Kurt Scholz was summoned by police to his place of business at 221 South La Brea around 3 a.m. on July 3, 1966; a window was broken and glass was on the floor; a radio set, record player and typewriter were missing. Jerry Kapcink, located at the same address operating a driving school, was summoned by police on July 3, 1966, around 4 or 5 a.m.; a window had been broken. Gustave Duschnes had an adding

machine in Kapcink's office; he next saw it at the police station on July 4, 1966.

Around 3 a.m. on July 3, 1966, Officers Oakes and Alexander were in the vicinity of Pico and Crenshaw, 3 miles from 221 South La Brea; their attention was drawn to defendant's vehicle traveling about 50 miles an hour in a 35-mile zone; while trying to clock the vehicle the officers observed the trunk open about one-third; they turned the red lights on the vehicle and defendant pulled over to the curb and stopped; the partly opened trunk was tied down with a light string and they saw through the opening what appeared to be business machinery and turntables. When the officers approached defendant he appeared to be extremely nervous and jittery, was sweating profusely, and spoke hesitatingly in a shaky voice. The officers asked him about the machinery in the trunk; defendant said he had been to a jam session in Hollywood, but further questioning established that he did not know the address or the name of those present or the name of any of the pieces of recording equipment, and knew nothing about the business machines; the typewriter had a sheet of letterhead paper in the roller containing the name and address of a business concern on La Brea.

Defendant testified that on his way to the home of his ex-wife he saw the machinery stacked by the curb like trash in the 700 block of Crenshaw and loaded it into the trunk which he locked; he denied that he was exceeding the speed limit when stopped by the officers.

Inasmuch as several issues raised by appellant relate to his overall claim that he was denied the right to representation by counsel, we refer briefly to the four counsel who appeared for him. At the trial (September 22, 1966) defendant was represented by Mr. Matzger, deputy public defender. After reading the testimony taken at the trial, we conclude, as did the judge, that Mr. Matzger did "the best he could with a very very bad factual situation." On October 14, 1966, on defendant's motion, Mr. Matzger was relieved and N. Garrett substituted as attorney of record; probation and sentence were continued to October 21, 1966. On October 21, 1966, Mr. Wyatt, appearing for defendant, moved for a new trial; the motion was denied, and Mr. Wyatt advised the court that defendant indicated to him he wanted him relieved as counsel; defendant then represented himself, the prior felony conviction was found to be true, and on defendant's motion probation and sentence were continued to November 15, 1966. Meanwhile

defendant retained H. Clay Jacke who apparently resigned. Thereafter defendant personally moved for, and was granted, several continuances of probation and sentence—to November 25 and December 9, 1966; during this time, in propria persona, he filed three petitions for writ of habeas corpus—on November 14, November 30 and December 1, 1966, all of which were denied. On December 9, 1966, defendant told the court he wanted a lawyer "who can walk the water"; the judge said he knew of none who "can walk the water" or "work miracles" but "If you wish me to appoint counsel for the purpose of sentencing, I will." Defendant responded in the negative but the judge persisted: "You do not want a lawyer at this time?" and defendant said, "No, sir, I do not." Defendant was arraigned for judgment and again the judge said, "This is the time, if you wish, to tell me that I should appoint another lawyer for you if you desire"; defendant replied that he did want a lawyer. The judge who pronounced judgment was not the trial judge and was unaware of defendant's previous experience with various counsel, thus he appointed the public defender; Mr. Matzger, who was in the courtroom, told him that in view of defendant's accusations against the public defender's office private counsel should be appointed, but that defendant had hired and fired several private counsel. After further discussion defendant's request was denied on the ground that he had had a public defender and discharged two [three] private lawyers.

■ Appellant's claim that he was denied a jury trial on the prior felony conviction is without merit. On September 22, 1966, when the cause was called for trial defendant was arraigned on the prior felony conviction alleged in the information to be a violation of "Penal Code, section 666.3." He denied the truth of the allegation, then properly waived his right to a trial by jury on both the main cause and the prior. The trial commenced and just after the first prosecution witness, Kurt Scholz, was sworn, the following occurred:

"THE COURT: What section was that the alleged prior, Counsel?

"MR. HARRISON: 666.3.

"THE COURT: There is no such section. There is a subdvision of Section 666, but there is no 666.3. Are you talking about Subdivision 3 of the Section?

"

"MR. HARRISON: Is that the proper one, your Honor, 666.3?

"THE COURT: Petty theft with a prior petty theft?

"Mr. Harrison: That is what we are talking about.

"Mr. Matzger: Yes, your Honor.

"Mr. Harrison: The People move to amend the allegation with respect to the prior to strike Section 666.3 therefrom and substitute in the place and stead thereof 666, Subdivision 3, your Honor.

"The Court: I will grant your motion.

"Let's go ahead."

Appellant claims he was deprived of a jury trial on the issue of the prior because no waiver of a jury trial was taken after the amendment and his prior waiver does not apply; and that he should have been rearraigned on the prior.

It is apparent that a typographical error was made in the preparation of the information and corrected by amendment by interlineation—"666.3" was crossed out in ink and "666, sub. 3" written above it. No new offense was substituted (*People* v. *Walker,* 170 Cal.App.2d 159, 166 [338 P.2d 536]), nor was the change a substantial one (*People* v. *Smylie,* 217 Cal.App.2d 118, 122 [31 Cal.Rptr. 360]) requiring either a new arraignment or jury waiver. Nor has appellant made a showing that any substantial right was prejudiced, and for good reason; when he waived his right to a jury on the prior felony conviction, alleged in the information to be a violation of section 666.3, Penal Code, he thought he was waiving a jury on the issue of whether he had been convicted of "petty theft with a prior petty theft," and in fact, he was. This is supported by defense counsel's admission, before the court called attention to the typographical error, that "we are talking about" the crime of "petty theft with a prior petty theft" as defined in section 666, subdivision 3, Penal Code, even though alleged as section 666.3, and defendant's subsequent failure to object to the amendment, mention arraignment or jury waiver thereon, or request a jury trial on the amended allegation. Even when the issue of the prior came before the trial judge for determination a month later, defendant made no mention of a jury trial although he engaged in an extensive discussion with the court and asked numerous questions. While the record shows that several months after the determination of the prior and after defendant was arraigned for judgment by another judge, he stated he would "like a jury trial on [the] prior" (considering this as another motion for new trial, the court denied the same), read in the context of the full colloquy between the court and defendant, it is clear that the statement had no connection

with the issue of jury waiver he now raises; it amounted to nothing more than a last effort to delay pronouncement of sentence.

Appellant says he was denied the right to counsel because (1) he "never personally stated that he wished to dismiss Mr. Wyatt as counsel," the court did not advise of his right to counsel and while representing himself the court found the allegation of the prior felony conviction to be true; and (2) sentence was pronounced while he was representing himself even though he made "repeated demands" of the court for counsel. Page after page of reporter's transcript of proceedings had subsequent to the trial attest the unlimited patience exhibited by the judge to a defendant whose obvious purpose was to delay the pronouncement of judgment and sentence. Carefully he advised defendant of his right to counsel, explained legal procedures, granted numerous continuances, repeatedly asked him if he wanted counsel and afforded him every opportunity to be heard.

As to Mr. Wyatt's dismissal on October 21, 1966, he appeared for defendant and moved for a new trial. After denial of the motion Mr. Wyatt advised the judge he had read the probation officer's report, and called his attention to the fact that a determination of the prior was still pending. The minutes showed that evidence on the prior had been offered at the trial (Exh. 5); while waiting for the exhibit, Mr. Wyatt further advised the judge that defendant asked him to ask the court for a continuance of sentence, then "Your Honor, he [defendant] has indicated that he would like to relieve me as counsel." The court relieved Mr. Wyatt and asked defendant if he also wanted a continuance of the determination of the prior but defendant answered, "Today is fine."[1] The court

---

[1] "THE COURT: I will continue the case one week.
"MR. WYATT: Is that satisfactory?
"THE DEFENDANT: No, it isn't.
"THE COURT: If you don't want it continued, I will sentence you now.
"THE DEFENDANT: At this time——
"THE COURT: I am not listening to you, sir. You keep your mouth shut. I will listen to your attorney but not you.
"MR. WYATT: Your Honor, he has indicated that he would like to relieve me as counsel.
"THE COURT: All right, we will allow him to do that.
"The matter is set today for sentence.
"THE DEFENDANT: Your Honor——
"THE COURT: I should be glad to listen to whatever you have to say in relation to your sentence, Mr. Gary.
"Is there any legal cause why sentence should not be imposed?
"THE DEFENDANT: I believe there is, sir.
"THE COURT: I should be glad to hear you.

read to defendant Exhibit 5[2] and asked, "Do you have anything to say as to the matter of whether or not you were so convicted and so sentenced?

"MR. WYATT: Submitted, your Honor.

"THE COURT: No, he is representing himself. He has relieved you.

"MR. WYATT: Thank you.

"THE DEFENDANT: Oh, wait a minute. When I asked for this, your Honor, didn't you say you wouldn't have this and you wouldn't let me dismiss the counsel? I am under the impression that is what you said. . . .

"THE COURT: You told me, sir, you wanted to dismiss your counsel and I said 'All right, you can represent yourself,' and now you are representing yourself."

Defendant did not take issue with the judge on the matter of his [defendant's] dismissal of Mr. Wyatt, interposed no objection to the discharge of Mr. Wyatt as his counsel and made no request for other counsel; instead, knowing he was representing himself, he undertook to do so without further comment. He asked the court why it was necessary to "bring . . . up" the prior, and there followed a lengthy explanation by the court detailing the procedure; the colloquy is found in 10 pages of reporter's transcript. Meanwhile Mr. Wyatt asked to be excused and the court excused him; defendant made no objection. After further argument the court found the alleged prior to be true and continued the cause for judgment and sentence. Then the following took place:

"THE DEFENDANT: The fundamental of the Court is to have

---

"THE DEFENDANT: I have asked for a continuance.

"THE COURT: What day do you want to continue it to?

"THE DEFENDANT: I would like for the 15th of November.

"THE COURT: All right—Wait a minute.

"All right. Tuesday, the 15th at 1:30. I will continue the matter of making a determination of the prior. I haven't done so—this is the day to do that—but we have continued the sentencing until this date and if you wish I will continue the determination of the prior to that time, too. Do you want me to do that or do you want me to determine the truth or falsity of the prior?

"THE DEFENDANT: Today is fine."

[2] "[C]ertified copy of the record forwarded by the Director of Corrections showing your conviction in the Superior court of the crime of petty theft with a prior. The sentence occurred, according to the record, a photostatic copy of the judgment of the Superior Court, on August 8th and you were sentenced to the State Prison for the term prescribed by law. The record further shows your term was fixed by the Adult Authority as three years, and you were put on parole on March 18th, 1965, and released on parole, and then on July 29th, 1966, your parole was suspended."

an attorney through all proceedings of the trial and the Court?

"THE COURT: Pardon?

"THE DEFENDANT: Isn't it right for the defendant to have a lawyer or a counsel?

"THE COURT: Yes, you had a lawyer and you fired him. You fired two of them. You fired the Public Defender, and you got Mr. Wyatt, and you just fired Mr. Wyatt.

"It is your right to be represented at all times by an attorney at all stages of the proceedings against you." The court advised defendant that at the time of sentence he could be represented by counsel, "But as I say, you said you didn't want to have a lawyer, you discharged your lawyer, so I allowed you to discharge him."

The defendant did not say "I want to dismiss Mr. Wyatt," but it is abundantly clear that he wanted to discharge Mr. Wyatt and did so. Defendant's intent to dismiss his counsel is supported by his silence and lack of objection on the many occasions the matter was discussed, his subsequent conduct and his concession at the time of sentence that he had requested Mr. Wyatt be relieved; and the court was warranted in discharging Mr. Wyatt as defendant's counsel and allowing him to proceed in propria persona. In the light of defendant's prior experience with the public defender and two private counsel and his conduct in court, we find it difficult to ascribe any degree of good faith to his present claim that because the judge did not advise him of his right to be represented by counsel at the time the issue of the prior was determined he did not know he was entitled to an attorney. Further, it appears that defendant was agreeable to having the issue of the prior disposed of, for the court asked him if he wanted the proceeding to be continued with the judgment and sentence but he answered, "Today is fine."

At the time of pronouncement of judgment and sentence (December 9, 1966) the court said, "You also previously requested that your new counsel be relieved from this matter; am I correct as to that?" and defendant answered, "As far as I understand, your Honor, yes." Then the court said, "Well, is it your desire that you proceed without counsel?" Defendant said no, that it was not, and asked permission to say something; he criticized the deputy public defender and the trial judge and leveled an accusation to the judge on the bench of taking "an oath to represent the People." A lengthy colloquy followed in which defendant equivocated when asked if he wanted a lawyer—first he said he did, then

he said he did not, then he said he did;[3] the judge appointed the public defender. Mr. Matzger, who was in the courtroom, spoke up, "I understand that Mr. Gary hired Niles Garrett and fired Niles Garrett. He hired H. Clay Jacke. Mr. Jacke resigned. In view of the accusations of Mr. Gary against the Public Defender's office, I think perhaps a private attorney would be in order." The judge asked defendant why he was dissatisfied with Garrett and Jacke.

"THE COURT: The Court has to make a finding that you think you want a lawyer in good faith and not merely for the purpose of delaying these proceedings. There have been three separate lawyers here that you fired.

"THE DEFENDANT: If the Court will listen just one moment. I inquired for a Bar Association lawyer back in July, July 24th. It is clearly stated that I didn't want anyone associated with the State or other court and this is the reason I am standing before the Court at this particular time.

---

[3] "THE COURT: Do you want a lawyer or not?
"THE DEFENDANT: *Yes, sir, I do.* If I could see him walk in and get as fair a trial as I have had so far and I could see him walk the water. I am praying for him every day. [Italics added.]
"THE COURT: I beg your pardon?
"THE DEFENDANT: If I could have a lawyer to come in here and can walk the water and have an opportunity as I am supposed to have under Provision 14 of the court. I appreciate that very much at this particular time.
"THE COURT: I don't know any lawyer that can walk the water.
"THE DEFENDANT: "I feel that I haven't had an opportunity to verify myself in my answer to clear myself of this. Everything has been denied, sir, of my rights. The probation report has been made out and that has been incorrect.
"THE COURT: I can't find you a lawyer, Mr. Gary, who can walk the water. Lawyers do not work miracles. If you wish to appoint counsel for the purpose of sentencing, I will. Beyond that the Court can't go. We can't find you a miracle worker.
". . . . . . . . . .
"THE COURT: You do not want a lawyer at this time?
"THE DEFENDANT: *No, sir, I do not.*" (Italics added.)
Then defendant was given an opportunity to read the probation report. A discussion then took place concerning matters found in the preliminary transcript and defendant talked about probable cause. The court then arraigned the defendant for sentence and said, "Now, Mr. Gary, is there any legal cause why sentence should not be imposed at this time?
"This is the time, if you wish, to tell me that I should appoint another lawyer for you or if you desire that I proceed with the sentencing and, also is there any other legal cause why sentence should not now be imposed?" and defendant then said he wanted the Fifth Amendment to be read aloud, he wanted a jury trial on his prior and the court said that if that was a motion for a new trial, it was denied. Again the court said, "Do you want a lawyer or not?" and defendant said, *"Yes, sir, I do."* (Italics added.)

"THE COURT: I think there is nothing for the Court to do but proceed with the sentence.

"The probation report having recommended that probation be denied on Count I, you are sentenced to the State Prison for the term prescribed by law.

"THE DEFENDANT: Without a lawyer? Your Honor, I would like to have one.

"THE COURT: The record will note that you have again requested a lawyer. The record will also note that it is this Court's finding that you were represented at the trial by the public defender, that you terminated his services, that you subsequently attained [sic] the services of Mr. Garrett. . . . Mr. Jacke, and you terminated him."

No legitimate reason for discharge of any of his counsel was advanced by defendant in the court below. The record reflects no justification for relieving the public defender. In fact, it appears from the reporter's transcript of the trial proceedings that the public defender properly and ably represented defendant at the trial.  ██  Defendant must accept counsel appointed by the court, and if that counsel performs satisfactorily defendant must either accept his services or proceed in propria persona. (*People* v. *Shields,* 232 Cal.App.2d 716, 723 [43 Cal.Rptr. 188].) However, before undertaking his own representation, defendant retained and discharged three private counsel. We have no doubt that when Mr. Wyatt was relieved and defendant proceeded in propria persona on the hearing for determination of the prior, he intelligently waived counsel. Further, between October 21, 1966, and December 9, 1966, he made no effort to obtain a lawyer, all the while in propria persona filing three separate petitions for writ of habeas corpus; in fact, he was not even sure he wanted counsel at the time of pronouncement of judgment and sentence. ██  Where defendant has intelligently waived counsel, the burden is on him to take some affirmative action to reinstate his right thereto. In such instance a motion for assistance of counsel would be directed to the sound discretion of the court. (*In re Turricia,* 54 Cal.2d 816, 821 [8 Cal.Rptr. 737, 356 P.2d 681].)  ██  It should be noted that on December 9, 1966, there was nothing left for the court to do but pronounce judgment and sentence; motion for new trial had long before been made and denied and a prior felony conviction determined to be true. We find no abuse of the court's discretion and no violation of defendant's constitutional rights in denying his request for counsel and allowing him to proceed on his own at

a stage when there was virtually nothing remaining to be done in the way of representation.

Appellant's contention that there is no evidence in the record that he was represented by counsel or made a knowing and intelligent waiver of counsel at the time he was convicted of the prior felony (petty theft with a prior petty theft), thus the judgment should be reversed insofar as it determines that he suffered a prior felony conviction will not be considered for the first time on appeal. (*People* v. *Merriam*, 66 Cal.2d 390, 396-398 [58 Cal.Rptr. 1, 426 P.2d 161].)

Without merit is appellant's claim that he never testified on the issue of the prior. The record shows that he was afforded several opportunities to present whatever evidence he had on the issue of the prior felony conviction. On two separate occasions the judge asked him if he had any evidence to submit on the issue.[4] We note that while defendant was still represented by Mr. Wyatt the issue of the prior was raised and in Mr. Wyatt's presence the court asked defendant if he wanted a continuance of the determination of the prior and defendant stated, "Today is fine"; after the judge read Exhibit 5 to defendant and the first time asked him if he had anything to say as to the matter of whether he had been so convicted and sentenced, Mr. Wyatt stated to the court "Submitted." Inasmuch as the court had relieved Mr. Wyatt the judge addressed himself to defendant; defendant told him he "had quite a few things in this matter" he would like to discuss and proceeded to do so at great length. Obviously he had no evidence to submit and offered none.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied July 15, 1968, and appellant's petition for a hearing by the Supreme Court was denied August 14, 1968.

---

[4] "Do you have anything to say as to the matter of whether or not you were so convicted and so sentenced?"; later, "I will be very glad to listen to anything you may say to show you were not so convicted."