[Crim. No. 11108. First Dist., Div. One. May 14, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD HOPKINS, Defendant and Appellant.

## Counsel

Harkjoon Paik, Public Defender, and Robert O'Farrell, Deputy Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**THE COURT.**—Defendant has appealed from a judgment of conviction entered following a court trial in which he was found guilty of four out of five offenses with which he was charged as a result of his participation in an armed robbery.[1] He was sentenced to prison for the term provided by law for armed robbery of the first degree (Pen. Code, §§ 211, 211a)[2] aggravated under the provisions of section 213[3] by a finding that he inten-

---

[1] Defendant was originally charged in five counts as follows: I—robbery while armed with a firearm and causing great bodily injury to the victim (see Penal Code, §§ 211, 211a and 213); II—assault with intent to commit murder in violation of section 217; III—assault with intent to commit robbery in violation of section 220; IV—assault with a deadly weapon and by means of force likely to produce great bodily injury in violation of section 245; and V—possession of a concealable firearm by a convicted felon in violation of section 12021. A prior conviction of a felony was also charged under count I. The court acquitted the defendant of the charge under count II. He was sentenced to concurrent terms of imprisonment under counts I, III, IV and V but execution of sentence was stayed on the last three counts with a provision that the stay would become permanent on defendant's completion of the sentence prescribed under count I.

[2] Penal Code sections 211 and 211a provide in pertinent part: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

"All robbery which is perpetrated . . . by a person being armed with a dangerous or deadly weapon . . . is robbery in the first degree. All other kinds of robbery are of the second degree."

[3] Section 213 provides: "Robbery is punishable by imprisonment in the state prison, as follows: [¶] 1. Robbery in the first degree for not less than five years. [¶] 2. Robbery in the second degree, for not less than one year. [¶] The preceding provisions of this section notwithstanding, in any case in which defendant committed robbery, and in the course of commission of the robbery, with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery, such fact shall be charged in the indictment or information and if found to be true by the jury, upon a jury trial, or if found to be true by the court, upon a court trial or if admitted by the defendant, defendant shall suffer confinement in the state prison from 15 years to life."

tionally inflicted great bodily injury on the victim of the robbery and under the provisions of section 12022.5[4] by a further finding that he used a firearm in the commission of the robbery. He was also charged with and found to have suffered and served a sentence for a prior conviction of robbery.

Defendant contends that the court erred in making a finding under section 12022.5 because the information contained no reference to the provisions of that section, nor was he otherwise given notice that if he was convicted he would be subjected to an additional consecutive sentence of five years (see fn. 4). He also asserts that he has been improperly subjected to a minimum term of 15 years because the trial court, after the defendant had waived a jury trial, erred in permitting the prosecutor to amend the information to allege in effect that defendant had intended to inflict great bodily injury in the course of the robbery, and in failing to rearraign the defendant on the charge as so augmented so as to obtain a waiver of his right to a jury trial on that charge. On review it is determined that the defendant's contentions must be sustained. The judgment must be modified to delete the aggravating circumstances under section 12022.5; and it must be reversed as to count I insofar as it embraces the finding under section 213 so that the defendant may be rearraigned on that count as amended, provided, however, that if the People withdraw the amendment to the complaint and the deletion of that finding, the defendant's conviction and sentence for robbery in the first degree may stand affirmed.

The charges grow out of an incident in which the defendant and another held up the attendant of the Western Union office in Monterey, California, only to be apprehended by prompt police action as they attempted to make their escape by departing out a rear window. The evidence showed that the defendant covered the victim with a firearm and led her to a back room where he forced her to sit in a chair facing the wall, except for one interlude in which she saw his confederate rifling the safe. When it became apparent that the police were arriving on the scene, the victim felt her throat being slashed on the left and then on the right. A doctor testified that he treated the victim for stab wounds which were bleeding quite pro-

---

[4]Section 12022.5 provides in pertinent part: "Any person who uses a firearm in the commission . . . of a robbery . . . upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years. Such additional period of imprisonment shall commence upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence."

fusely. He opined that the wounds had been made by a razor or a sharp knife. He stated the wound on the left side of the neck was about four and three-quarters inches long, and had gone through the neck muscles and stopped a fraction of an inch away from the jugular vein and the carotid artery. He said the wound could have been lethal if either of those two had been hit. He observed a second three-quarter inch wound on the left side of the neck at the anterior end of the first wound, and a third wound, four inches long, located on the neck. The doctor said that if first aid had not been rendered to the victim immediately at the scene of the crime, she would have bled to death from the wounds.

A razor and an operable and loaded firearm were found in the vicinity of the scene of the men's capture. Testimony was introduced of admissions of the defendant in which he acknowledged that he had held a razor at the victim's throat, that she moved and the razor had cut her, and that he cut her two more times. At the trial defendant testified and he admitted robbing the store and carrying a revolver and razor. He claimed he concealed the gun and razor as he had promised his confederate he would not use a weapon. Thus, he held the razor in his left hand so it could not be seen and "went and put it up to her neck so she could know I still had a weapon." The infliction of the injuries was explained as follows: "So, she flinched, and that cut the first cut. And the other two cuts on her, I—definitely put them there because I was the one had the razor, but I don't remember putting them cuts there on her. I remember the first one, she jerked around, but I don't remember putting the other two on her."

The defendant denied that he intended to cut her and said he was just trying to keep her quiet until they could get out of there. He claims he kind of panicked after noticing that he had given her the first cut because he could hear the police.

## I

Count I of the information alleged "That at the time of the commission of said offense, said defendant . . . was personally armed with a firearm, to-wit: .22 CAL REVOLVER." The court further found "that the defendant used a firearm in the commission of the robbery and that Section 12022.5 of the California Penal Code is to be applied."·

In *People* v. *Najera* (1972) 8 Cal.3d 504 [105 Cal.Rptr. 345, 503 P.2d 1353], the court stated: ". . . it is clearly the better practice, in terms of giving defendant fair notice of the charges against him, to set forth in the information whether or not application of section 12022 or 12022.5 will be sought." (8 Cal.3d at p. 509, fn. 4. See also *People* v. *Faulkner*

(1972) 28 Cal.App.3d 384, 394 [104 Cal.Rptr. 625]; and *People* v. *Henderson* (1972) 26 Cal.App.3d 232, 235-238 [102 Cal.Rptr. 670]. Cf. *People* v. *Spencer* (1972) 22 Cal.App.3d 786, 800 [99 Cal.Rptr. 681]; and *People* v. *Washington* (1971) 17 Cal.App.3d 470, 474-475 [94 Cal. Rptr. 882], disapproved in *People* v. *Najera, supra.*)

The People concede that the allegation that the defendant was armed with a firearm during the commission of the robbery does not permit a finding that he used a firearm in the commission of a robbery. (See *People* v. *Najera, supra,* 8 Cal.3d at p. 509, fn. 4.) They assert, however, that the information construed as a whole notified the defendant that the prosecution would seek to prove that he used a firearm during the course of the robbery. It is true that count I alleged two elements of section 12022.5 in that it alleged the commission of a robbery, and possession of a firearm during that act. Count IV contains allegations that the defendant assaulted the robbery victim with a firearm, again referring to a .22 caliber revolver. Obviously the assault of a victim with a firearm during the course of robbery is a use of that firearm. (See *People* v. *Chambers* (1972) 7 Cal.3d 666, 672-673 [102 Cal.Rptr. 776, 498 P.2d 1024]; and *People* v. *Washington, supra,* 17 Cal.App.3d 470, 477.)

Under the terms of section 958 of the Penal Code it is not necessary to charge an offense in the specific language of the statute if "other words conveying the same meaning [are] . . . used." (See also Pen. Code, § 952; *People* v. *Randazzo* (1957) 48 Cal.2d 484, 489 [310 P.2d 413] [cert. den., 355 U.S. 865 (2 L.Ed.2d 70, 78 S.Ct. 98)]; and *People* v. *Atwood* (1963) .223 Cal.App.2d 316, 323 [35 Cal.Rptr. 831].) Moreover, a defendant may be found guilty of a lesser included offense of a crime charged in the information, despite the difference in the language used to define the respective offenses. (See Pen. Code, § 1159; *People* v. *Marshall* (1957) 48 Cal.2d 394, 400-401 and 407 [309 P.2d 456]; *People* v. *Gonzalez* (1972) 28 Cal.App.3d 1091, 1095-1096 [104 Cal.Rptr. 530] [overruled *People* v. *Schueren* (1973) 10 Cal.3d 553, 558, fn. 6 (111 Cal.Rptr. 129, 516 P.2d 833)]; and *People* v. *Troyn* (1964) 229 Cal.App.2d 181, 184-185 [39 Cal.Rptr. 924].)

The People's reliance upon the foregoing principles is not convincing. It may be true that the defendant knew that he would be confronted with an attempt to prove the fact that he used a firearm during the commission of the robbery. He could not therefore be surprised by such proof (see *In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5]; and *People* v. *Spencer, supra,* 22 Cal.App.3d 786, 800), nor can he say that his preparation to meet the facts would have been different if the complaint had

specifically alleged aggravation under the provisions of section 12022.5. Nevertheless, the People's argument overlooks the materiality of the charges made, and the effect of the possible punishment upon the defendant's tactical approach to the trial. In *People* v. *Henderson, supra,* the court noted: ". . . when defendant was first served with and read the information he had no more reason to believe that the People were attempting to subject him to any such additional punishment by proving that he was not only armed with the shotgun, but actually used it, than does a person who is charged with simple kidnaping (Pen. Code, § 207) have to fear life imprisonment if later proof should show that he kidnaped for ransom. (Pen. Code, § 209.) . . . In the case at bar the difference between using a firearm and being merely armed with one was the difference between a consecutive prison term of five years to life (Pen. Code, §§ 671, 12022.5) and a bad report card." (26 Cal.App.3d at p. 237. See also *People* v. *Najera, supra,* 8 Cal.3d 504, 509, fn. 4.)

The importance of the charges made in plea bargaining has been recognized. (See *People* v. *Flores* (1971) 6 Cal.3d 305, 309-310 [98 Cal.Rptr. 822, 491 P.2d 406].) Here at the time defendant's case was set for trial he faced the possibility of punishment for any of the offenses charged. Since they were all connected in their commission and were the result of a common objective he might be convicted of all but he could arguably only be punished for one. (Pen. Code, § 654; *Neal* v. *State of California* (1960) 55 Cal.2d 11, 18-21 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Ridley* (1965) 63 Cal.2d 671, 677-678 [47 Cal.Rptr. 796, 408 P.2d 124] [robbery and felonious assault]; and *People* v. *Venegas* (1970) 10 Cal.App.3d 814, 820-822 [89 Cal.Rptr. 103] [felonious assault and possession of firearm by felon].) On that basis he waived a jury trial. Four days after the conclusion of that trial he discovered for the first time, at sentencing, that the People were attempting to impose a further and additional punishment which would be consecutive to that for the most grievous of which he was found guilty. Under these circumstances, the findings that the defendant used a firearm in the commission of the robbery within the provisions of section 12022.5 of the Penal Code must be stricken. (See *People* v. *Flores, supra,* 6 Cal.3d at p. 310.)

## II

■ The information alleged, in connection with the robbery count, "at the time of the commission of said offense, said defendants subjected [the victim] to suffer great bodily harm."

When the case was called at the time set for trial, defendant personally and through his counsel waived a jury trial. The court having satisfied

itself that the defendant understood the waiver, and that his counsel and the prosecutor joined therein, accepted the jury waiver. Thereafter the prosecutor offered and over the defendant's objection was permitted to file an amendment to the information which read as follows: ". . . that, in the course of the commission of said robbery, said defendants inflicted great bodily injury on the victim of said offense, . . . with the intent to inflict such injury upon her."

The prosecutor represented, "It's not a substantial amendment." (Cf. § 213, fn. 3 above; and *People* v. *Richardson* (1972) 23 Cal.App.3d 403, 410-411 [100 Cal.Rptr. 251].) The defendant's counsel pointed out, ". . . I have been aware of this [failure to allege the specific intent to inflict great bodily injury] for some time. It's one of the reasons, one of the motivations in asking for a court trial. One of the issues I was going to raise was the legal issue as to the sufficiency of the allegation." The court overruled the objection and without pause asked the prosecutor if he wished to make an opening statement. Upon receiving his waiver, the court addressed the attorney for the defendant, who in turn stated, "Reserve it at this time." Without further comment from either party the court directed the prosecutor to call his first witness.

At the conclusion of the case for the prosecution the defendant moved for an acquittal with respect to the allegations under section 213 of the Penal Code (see Pen. Code, § 1118), on the dual grounds that the evidence was insufficient to sustain the allegations as amended, and that the defendant having waived a jury trial he could not be tried on charges which were added after that waiver. That motion was denied.

After the case was submitted the court found "that the defendant did inflict great bodily injury on the victim, . . . with intent to inflict such injury upon her." At the sentencing four days later the defendant sought a new trial with respect to the foregoing finding on both of the grounds advanced at the time of his motion for an acquittal, and he requested that the finding be stricken from the judgment. This motion was denied.[5]

---

[5]In announcing his decision the court stated, "The court finds the defendant guilty of the violation as set forth in Count 1, and fixes the robbery as robbery in the first degree. The court finds that the defendant did inflict great bodily injury on the victim . . . with intent to inflict such injury upon her." At sentencing four days later, the court in denying defendant's motion for a new trial with respect to that finding stated, "The court finds that the inflicting of the injuries on the victim was not to murder the victim, but it was to, at some time, intimidate the victim, as far as possible, from testifying against the defendant at some future time. Obviously, it did have a serious effect upon the victim in this matter. The court finds, further, that the conversation that the defendant had in the jail, the court finds that this was intentionally

In *People* v. *Carroll* (1970) 1 Cal.3d 581 [83 Cal.Rptr. 176, 463 P.2d 400] the court noted: "The clear intent of the Legislature in increasing the penalty for first degree robbery by the 1967 amendment to section 213 of the Penal Code was to discourage robbers from inflicting great bodily injury on their victims and thereby provide a measure of protection for robbery victims, including such unfortunate victims as Gulsvig, who possessed nothing worth stealing." (1 Cal.3d at p. 584.) In *People* v. *Richardson, supra,* the court noted: "In the case of felonies, it is the minimum rather than the maximum term which ordinarily is of chief importance to the prisoner. The maximum punishment for many felonies is life imprisonment, and this is so for second degree robbery, of which appellant stands convicted. . . . Therefore, the extraordinary enlargement of the minimum term for second degree robbery, from 1 year to 15 years when great bodily injury is intended and inflicted, is a grave matter. It cannot be permitted to stand, in the face of deficient instructions." (23 Cal.App.3d at p. 412.) So the increase in the charge from a possible penalty of a minimum of 5 years for armed robbery to a minimum of 15 years was a substantial change in the nature of the offense.

The question of express waiver of jury trial in connection with receiving a plea of guilty (see *Boykin* v. *Alabama* (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709]) was considered by the court in *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. The court noted, ". . . there was an apparent deficiency regarding a specific waiver of petitioner's right to a jury trial, since in California such a waiver must be expressed *in words by the defendant* and cannot be implied from the defendant's conduct. (Cal. Const. art. I, § 7; *People* v. *Holmes* (1960) *supra,* 54 Cal.2d 442; *People* v. *Walker* (1959) 170 Cal.App.2d 159 . . . [other references omitted].)" (1 Cal.3d at p. 131. See, in addition to the cited cases, *People* v. *Terry* (1957) 152 Cal.App.2d 75, 78-80 [312

done on the part of the defendant for his own benefit, and also for the benefit of [his codefendant], and done in such a manner that someone would overhear the defendant making those statements. The motion for the new trial is denied." The judge then pronounced sentence without a specific reference to the contested finding other than "It is the Judgment and Sentence of this court that for the crime of robbery, so contained in Count 1 of the Information, that the defendant be punished by imprisonment in the State Prison for the term prescribed by law."

The clerk's minutes reflect the contested finding in the court's decision and in the proceedings leading to the defendant's sentence. Nevertheless, no such finding is found in the abstract of judgment which merely recites, "On his plea of Not Guilty to Count I, he was convicted by the Court of violation of Section 211 of the California Penal Code, Robbery, First Degree, . . ." It is assumed that the reference to count I in the court's sentencing and the abstract refer to the count as amended and that the defendant presently is imprisoned with a 15-year minimum sentence.

P.2d 709]; *People* v. *Pechar* (1955) 130 Cal.App.2d 616, 617-619 [279 P.2d 570]; *People* v. *Washington* (1949) 95 Cal.App.2d 454, 458-459 [213 P.2d 70]; and *People* v. *Garcia* (1929) 98 Cal.App. 702, 704-705 [277 P. 747].)

In *People* v. *Walker* (1959) 170 Cal.App.2d 159 [338 P.2d 536], after the defendant had waived a jury trial on a charge of possession of heroin, the prosecution was permitted to amend the complaint to charge possession for sale, and the defendant was convicted by the court on that charge. On appeal the court upheld the amendment against attack on the ground it was not warranted by the evidence produced at the preliminary examination (170 Cal.App.2d at pp. 163-164), and on the ground that no new plea had been required, because it was apparent the case had been tried as though his prior plea of not guilty was interposed to the amended complaint (*id.*, at pp. 164-165). Nevertheless, the court found that the judgment and commitment were void because there was no waiver of a jury trial with respect to the new offense. The court concluded as follows: "The amendment establishes a new, separate and distinct offense, far more serious in nature than the one originally alleged, and with this new pleading there arose the right to an arraignment thereon, plea and jury trial. The record before us does not disclose a waiver of that right in accord with the constitutional provision. Having in mind the sanctity of the right to a trial by jury in criminal cases and the evident purpose of the constitutional provision that no defendant should be deprived of that right unless he unequivocally and personally expresses his consent to such a waiver in open court, it is our view that the judgment and commitment are void." (*Id.*, at p. 166.)

In this case, unlike *People* v. *Walker, supra,* there was no abandonment of the original information, it was merely amended to show circumstances which would warrant augmented punishment. In *People* v. *Gary* (1968) 263 Cal.App.2d 192 [69 Cal.Rptr. 777], there was a correction of a typographical error in the numerical designation of a prior conviction with which the defendant was originally charged. The court distinguished *People* v. *Walker,* and pointed out, "No new offense was substituted . . . nor was the change a substantial one . . . requiring either a new arraignment or jury waiver." (263 Cal.App.2d at p. 197.) Moreover, the record clearly showed that the prior offense so erroneously designated had been discussed in its substance before the jury waiver which ran to the prior conviction as erroneously designated. Similarly in *People* v. *Smylie* (1963) 217 Cal. App.2d 118 [32 Cal.Rptr. 360], where the defendant charged with felony drunk driving had been advised that one element was doing an act forbidden by law, there was no substantial change in the charge by permitting amendment to show violation of a specific Vehicle Code section not in-

cluded in the several set forth as part of the original basic charge. (217 Cal.App.2d at p. 122.) On the other hand, in *People* v. *Luick* (1972) 24 Cal.App.3d 555 [101 Cal.Rptr. 252], where no prior conviction had been alleged at the time the defendant waived a jury trial, the court deleted the trial court's finding that the defendant had suffered two of five prior convictions which had only been charged by amendment subsequent to the defendant's waiver. The court stated, " . . . where allegations of priors are added *after* a jury waiver, defendant must, personally and expressly, waive jury trial on the issue thus presented, . . ." (24 Cal.App.3d at p. 559).

It is concluded that in this case a substantial change was made in the charges faced by the defendant by amendment made after he had waived a jury trial, and that the judgment is in error insofar as it augments the punishment by findings on issues with respect to which the defendant never personally waived a jury trial.

The People seek to sustain the judgment on three separate theories. First, they claim that at the time he waived a jury trial the defendant had notice from the information that the prosecution would seek to prove that he assaulted his victims with intent to commit murder (see count II, fn. 1, *supra*), and that *a fortiori* he was able to prepare a defense to the charge that he intended to commit great bodily injury. In *People* v. *Lewis* (1960) 186 Cal.App.2d 585 [9 Cal.Rptr. 263], which is cited by the People, the court held it was not error to refuse to give an instruction on assault with means likely to cause great bodily harm as a lesser and included offense of a charge of murder which did not specify the means used to commit the offense, but which was framed in general terms (186 Cal.App.2d at pp. 599-600). The court noted, "It is clear that murder need not necessarily be committed with a deadly weapon or with a means likely to cause great bodily harm." (*Id.*, p. 600.) The fact that it may be proper to give an instruction on simple assault under a charge of assault with intent to commit murder, and that it may be unnecessary, when such instruction is given, to instruct on simple battery (see *People* v. *Kausen* (1933) 133 Cal.App. 327, 331 [23 P.2d 1047]) does not show that the allegations of the felonious assault count can furnish the requisite intent which was omitted from the allegations of the first count. Moreover, any reliance on the intent alleged in count II is a questionable foundation on which to rest the intent for aggravation of count I, when in fact the trial resulted in an acquittal on count II.

In similar vein, the People secondly urge that the defendant waived a jury trial with knowledge that, under the provisions of section 1009 of the

Penal Code,[6] the prosecution could move to amend the accusatory pleading "at any stage of the proceedings." In *People* v. *Crosby* (1962) 58 Cal. 2d 713 [25 Cal.Rptr. 847, 375 P.2d 839], the court expounded on the purpose and scope of section 1009 as follows: "If the required notice is given, the omission of an allegation charging a technical 'essential' element of the offense may, pursuant to section 1009, be corrected by timely amendment. . . . [¶] It has been held in a variety of contexts that an amendment adding an omitted allegation of a substantive element of the offense sought to be charged does not 'change the offense.' [Citations.]" (58 Cal.2d at p. 723. See also *Leonard* v. *Superior Court* (1935) 4 Cal.2d 215, 218-219 [48 P.2d 687]; *People* v. *Gary, supra,* 263 Cal.App.2d 192, 196-197; *People* v. *Potter* (1966) 240 Cal.App.2d 621, 633 [49 Cal.Rptr. 892] [cert. den., 388 U.S. 924 (18 L.Ed.2d 1374, 87 S.Ct. 2118), rehg. den., 389 U.S. 890 (19 L.Ed.2d 205, 88 S.Ct. 20)]; *People* v. *Smylie, supra,* 217 Cal.App.2d 118, 122; and *People* v. *Walker, supra,* 170 Cal.App.2d 159, 163.) Here the defendant received some notice that the prosecution was attempting to show an aggravated robbery by the original allegations which read: "That at the time of the commission of said offense, said defendants subjected [the victim] to suffer great bodily harm." In the absence of a showing that there was no evidence at the preliminary examination to support the amended allegation of intent, or a request for rearraignment, the defendant may be barred from asserting those objections. (See *People* v. *Walker, supra,* 170 Cal.App.2d at pp. 163-164.) Nevertheless, "the determinative question . . . is whether the proposed amendment is such as to 'change the offense charged' within the meaning of section 1009 of the Penal Code." (*People* v. *Crosby, supra,* 58 Cal.2d at p. 723.) Moreover, the statute requires inquiry into whether or not "the substantial rights of the defendant would be prejudiced" by the amendment.

Examination of the information at the time the defendant waived a jury trial reveals that under count I as originally alleged the defendant was subject to a minimum term of five years if convicted of first degree robbery. Under count II, if the intent were proved, the minimum was only one year.

---

[6]Section 1009 provides in pertinent part: ". . . The court in which an action is pending may order or permit an amendment of an . . . information . . . for any defect or insufficiency, at any stage of the proceedings, or if the defect in an . . . information be one that cannot be remedied by amendment, may order . . . a new information to be filed. The defendant shall be required to plead to such amendment or amended pleading forthwith . . . and the trial or other proceeding shall continue as if the pleading had been originally filed as amended unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. . . . to change the offense charged . . . an information [cannot be amended] so as to charge an offense not shown by the evidence taken at the preliminary examination. . . ."

By the amendment he was subjected to a minimum of 15 years. It is unnecessary to determine whether the change from armed robbery to armed robbery with intent to inflict great bodily injury on the victim changed the offense charged within the meaning of section 1009. It is clear that a substantial right of the defendant, to wit, to elect whether to have a jury trial before being subjected to an additional 10-year minimum sentence, was prejudiced by the court's failure to properly arraign him and secure a personal jury waiver on the information as amended. It is immaterial that the defendant had notice that the factual issues might be the same before and after the amendment, and that he was therefore not surprised. He was entitled to know the true consequences of an adverse finding on the facts before he elected to waive a jury.

The People's final argument that the defendant who waived a jury on the issue of the intent necessary to convict for assault with intent to commit murder, would certainly have waived a jury on the issue of intent to inflict great bodily injury, founders upon its failure to consider the difference in the punishment resulting from an adverse finding on each of those issues.

In *People* v. *Luick, supra,* the court summarily modified the judgment by deleting the findings concerning the defendant's prior conviction and thereby relieved him from any enhancement of punishment thereby resulting. Ordinarily where the defendant is denied a jury trial and the judgment is set aside the case is remanded for retrial. In the hybrid situation presented by this case the judgment should be set aside and the case should be remanded with instructions to rearraign the defendant on the first count as amended, and thereafter conduct such further proceedings as may be necessary in the premises. Because the defendant waived a right to jury trial on the charge of robbery in the first degree and was properly convicted of that offense, the People should have the opportunity to consent to the deletion of the findings predicated upon the amendment to the complaint (see fn. 5 above).

The judgment is modified by deleting therefrom the finding reading, "The Court further finds that the defendant used a firearm in the commission of the robbery and that Section 12022.5 of the California Penal Code is to be applied"; and the conviction and sentence under count I are reversed insofar as they embrace the finding reading, "The Court further finds that the defendant in the course of the commission of the robbery, with the intent to inflict such injury, inflicted great bodily injury on the victim of the robbery, with a straight razor." The remainder of the judgment is affirmed as herein modified. The case is remanded for arraignment

of the defendant on the allegations of count I of the information as amended, unless within 30 days after the filing of the remittitur the People file written consent to the withdrawal of the amendment and the deletion of the finding relating thereto, in which event the defendant's conviction and sentence for robbery in the first degree shall be deemed affirmed.