[No. F006498. Fifth Dist. Apr. 15, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
RAWLIE L. SANDERS, Defendant and Appellant.

## COUNSEL

Nancy Marsh, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Jane N. Kirkland, and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HARRIS, J.*—Appellant Rawlie L. Sanders was charged in a three-count information with attempted arson (Pen. Code, § 455);[1] unlawful possession of flammable material and/or a device with intent to burn a structure (§ 453, subd. (a)), and possession of a destructive device with intent to injure, intimidate, or terrify a person or to destroy property (§ 12303.3). Prior to commencement of trial, appellant, having been fully advised of his constitutional right to a jury trial, made a knowing and intelligent waiver of that right in exchange for the People's dismissal of count III of the information, the charged violation of section 12303.3. However, on the second day of trial and over appellant's objection, the court granted the People's motion to file a second amended information which added a third count and charged appellant with possession of a firebomb (§ 453, subd. (b)), a lesser included offense to violation of section 12303.3, the count which had been dismissed. Appellant was arraigned on the amended information and his plea of not guilty taken; however, the trial court failed, prior to proceeding with the trial or at any later time, to obtain appellant's express personal waiver of his right

---

*Assigned by the Acting Chairperson of the Judicial Council.
[1]Further statutory references are to the Penal Code unless otherwise indicated.

to a jury trial with respect to the second amended information. Appellant was found guilty as charged on all three counts.

Appellant appeals, contending (1) the trial court abused its discretion in granting the People leave to file a second amended information adding as a third count the alleged violation of section 453, subdivision (b); and (2) the trial court's failure to obtain his express waiver of a jury trial after addition of this third count requires reversal.

FACTS

Since the issues appellant here raises are strictly procedural, a lengthy recitation of the underlying facts is not necessary. Suffice it to say all three counts arose from events occurring in the late afternoon of May 8, 1985, when a brown paper bag containing two Pepsi bottles full of gasoline and equipped with cloth wicks was set afire and hurled at the apartment of Phyllis Foster. This makeshift firebomb landed in a flowerbed outside Foster's apartment where it apparently burned itself out without igniting the adjacent structure; Foster and her six-year-old son escaped from the apartment unhurt.

Appellant and Foster were casually acquainted; appellant had given Foster a ride home in the early morning hours preceding the events described above. Appellant, believing Foster had stolen a .45-caliber automatic pistol from his car, confronted Foster twice on the afternoon of May 8 prior to the firebombing in an attempt to retrieve the weapon, but Foster adamantly denied having taken the gun. On each of the visits appellant was wearing black shoes, gray slacks, and a royal blue pullover shirt. When appellant left after the second visit, Foster described him as very angry.

Foster saw the firebomb being hurled at her house. Although she could not see the face of the perpetrator, she was able to see his arms as the paper sack was lit and thrown. The arms were dark-skinned, like appellant's, and Foster also observed the short sleeves of a royal blue shirt and a silver-colored watch on one wrist. After fleeing her apartment, Foster ran down an adjacent alley, stopped a short distance from her house, and turned to see if anyone was following her. She saw appellant, whom she identified in court, standing at the end of the alley about 50 feet away and facing her. Foster estimated about 15 seconds had elapsed between the time the bag was thrown and the time she turned and saw appellant. As Foster fled from the alley, she saw appellant's car parked near the end of the alley.

Appellant's defense was alibi. Despite acknowledging his earlier visits to Foster's apartment and the dispute over appellant's missing gun, appellant testified that he experienced car trouble after his second visit to Foster's

apartment and returned to his home in Clovis to attempt repairs. After fixing the car, appellant, his wife, and their children remained at home for the rest of the evening. Appellant's wife confirmed his version of the events. Appellant testified he fully intended to contact the police about his stolen gun but had not had time to do so when he was apprehended on May 9, 1985.

### DISCUSSION

Respondent has conceded, and we agree, that appellant's conviction on count III of the second amended information (§ 453, subd. (b)) must be reversed because of the trial court's failure to obtain appellant's express waiver of his right to a jury trial on that count.

On the morning of the second day of trial, the trial court, over appellant's objection, permitted the district attorney to file his second amended information, adding a third count charging appellant with possession of a firebomb in violation of section 453, subdivision (b). The district attorney acknowledged this offense was one necessarily included within the charged violation of section 12303.3 which had been dismissed, and appellant's trial counsel stated to the court: "Mr. Sanders has received a copy of the Information. And he waives further advice on his constitutional rights." Appellant entered his plea of not guilty to the second amended information, and the People called their next witness. Appellant, who previously had waived his right to a jury trial on the two-count information, upon which waiver the court trial had commenced, was not asked nor did he expressly waive a jury trial on the new count which the district attorney had added. *People* v. *Walker* (1959) 170 Cal.App.2d 159, 165-166 [338 P.2d 536], holds, as appellant contends, that a waiver of jury trial must be express and must be made by a defendant personally. (See also *People* v. *Hopkins* (1974) 39 Cal.App.3d 107 [113 Cal.Rptr. 880].)

Appellant next contends that once the trial court permitted the filing, over his objection, of the second amended information, he should have been given an opportunity anew to decide whether he wished to waive his right to a jury trial as to all counts therein contained and should not be bound by the express personal waiver he had previously made with respect to counts I and II prior to commencement of trial. Appellant therefore asserts that all three counts should be reversed and remanded for new trial. We conclude that reversal of counts I and II is not warranted by the facts in this case.

*People* v. *Walker,* on which appellant relies for his contention that an express waiver of his right to trial by jury was required, went on to hold that "with the People's abandonment of the original information by way of amendment also went the defendant's plea thereto, and waiver of a jury

thereon. The amendment establishes a new, separate and distinct offense, far more serious in nature than the one originally alleged, and with this new pleading there arose the right to an arraignment thereon, plea and jury trial." (*Id.* at p. 166.) In *Walker,* the defendant originally had been charged with possession of heroin and, as to that charge, waived his right to a jury trial. Before trial commenced, however, the People amended the information by interlineation to drop the possession charge altogether and charge defendant with the sale of heroin, obviously a much more serious offense and one which totally supplanted the original information. The instant case is distinguishable.

Here, the two original counts on which appellant had agreed to proceed to court trial, attempted arson and possession of flammable material or an explosive device with the intent to set fire to a structure, remained unchanged by the amendment. All the amendment did was add a third count, which arose out of precisely the same events and which was merely an alternative means of criminally classifying the conduct for which defendant stood accused. Thus unlike *Walker* where the original information virtually disappeared in the amendment, here the original information remained extant and was merely broadened by the addition of a third, related charge.

Appellant, whose court trial on counts I and II was already in progress, expressed no objection to proceeding with the court trial nor did he give any indication that his prior express and personal waiver of his right to a jury trial as to counts I and II was in any way altered by the amendment or the addition of count III. We conclude that under these circumstances, appellant's waiver remained effective as to counts I and II and that, therefore, the convictions on those counts may be affirmed.

We turn now to the viability of count III after reversal. Appellant contends that the trial court abused its discretion in permitting the filing of the second amended information. Notwithstanding the agreement to drop count III, charging violation of section 12303.3, in exchange for appellant's waiver of a jury trial, the prosecutor moved to amend the information by charging as a third count violation of section 453, subdivision (b), possession of a firebomb. Recognizing that this new offense was "actually" and "wholly" included within the count which was stricken, the prosecutor acknowledged he "didn't have it as a separate count before for, basically, tactical reasons." Referring to the count which had been stricken, the prosecutor went on to say, "basically I thought that I would then wish to include this 453(b), which I would have had as part of the Information had we not stricken—if I had never filed the—excuse me. If I had never filed the 1203 [*sic*], I would have included 453(b) of the Penal Code."

The prosecutor relied upon the statutory authority of a trial court to authorize amendments to information up to and through the time of trial; section 1009 provides in pertinent part: "The court in which an action is pending may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings, or if the defect in an indictment or information be one that cannot be remedied by amendment, may order the case submitted to the same or another grand jury, or a new information to be filed. The defendant shall be required to plead to such amendment or amended pleading forthwith, or, at the time fixed for pleading, if he has not yet pleaded and the trial or other proceeding shall continue as if the pleading had been originally filed as amended, unless the substantial rights of the defendant would be prejudiced thereby, in which event a reasonable postponement, not longer than the ends of justice require, may be granted. An indictment or accusation cannot be amended so as to change the offense charged, nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination. A complaint cannot be amended to charge an offense not attempted to be charged by the original complaint, except that separate counts may be added which might properly have been joined in the original complaint. . . ."

■ Permitting the prosecution to amend a complaint is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed absent a clear abuse of discretion. (*People* v. *George* (1980) 109 Cal.App.3d 814, 819 [167 Cal.Rptr. 603], and cases listed therein.)

■ Appellant argues that the amendment was violative of the count III dismissal/jury trial waiver agreement and that he is entitled to specific performance of the bargained-for agreement.

We find no authority squarely covering the issue but determine its resolution may be found in an analogy to cases considering specific performance of plea bargains.

Although not a plea bargain in the traditional sense of a defendant entering a plea of guilty to certain counts in exchange for consideration by the prosecution on other counts, it is clear that here appellant's waiver of his right to a jury trial was conditioned upon and in exchange for the prosecution's dismissal of the third count of the information, that charging a violation of section 12303.3. In fact, having accepted appellant's waiver and asking if the People wanted anything placed on the record, the district attorney responded to the court, "No, Your Honor, other than the People would move to strike Count 3, in lieu of the defendant giving up his right to a jury trial. We would also give up our right to a jury trial."

We find unconvincing respondent's contention that appellant's bargained-for consideration was relief from possible imposition of the statutorily prescribed mandatory prison sentence applicable to a conviction of violating section 12303.3. No mention was made at the time the bargain was struck of the statutorily prescribed mandatory prison sentence, except by the court noting that, "And Count 3 is the 1203.3 [*sic*], which was the mandatory prison."

It is not enough, as the People argue, that appellant was neither surprised by the amended count nor exposed to any additional punishment as a result of the amended count since its inseparability from the other two counts would prohibit multiple punishment under section 654. Moreover, the record fails to establish that the whole of the inducement offered appellant was elimination of the mandatory prison sentence required by section 12303.3. Although the court did note that the newly added third count did "not expose the defendant to a—any type of mandatory sentence, which was part of the understanding when count 3 was dismissed," this court simply does not know and should not speculate about appellant's precise motives in accepting the agreement offered by the prosecutor. Certainly, appellant may have felt it more advantageous to face two felony counts than three, regardless of one count carrying a mandatory prison term.

We conclude the trial court did abuse its discretion in the instant case. In permitting the prosecutor to file the amended information, the court effectively approved the prosecutor's breach of an agreement entered into with appellant and on which appellant relied in giving up a constitutional right so valuable that it can be waived only expressly and personally by a defendant in open court. This is not, as previously noted, a traditional plea bargain context, since appellant did not enter a guilty plea in exchange for favorable consideration by the prosecutor as to other counts. That is a distinction without a meaningful difference. This is clearly a case in which the prosecutor and appellant entered into an agreement by the terms of which both sides gained a benefit and both sides gave up something to which they were otherwise entitled.

The United States Supreme Court said with respect to plea bargains: "This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to ensure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello* v. *New York* (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 433, 92 S.Ct. 495].)

In a recent case considering the availability of specific enforcement as one remedy for breach of a plea bargain, the California Supreme Court held the harmless error test inapplicable "to a situation involving failure to fulfill the terms of a plea bargain. Defendant's entitlement to the benefit of his bargain cannot be predicated on the assumption that violation of the bargain must result in some measurable detriment. Because a court can only speculate why a defendant would negotiate for a particular term of a bargain, implementation should not be contingent on others' assessment of the value of the term to defendant." (*People* v. *Mancheno* (1982) 32 Cal.3d 855, 865 [187 Cal.Rptr. 441, 654 P.2d 211].)

To assume appellant's only interest in accepting was avoidance of the mandatory prison term prescribed by section 12303.3 is to assume that had the prosecutor approached appellant with an offer of reducing the offense to a violation of 453, subdivision (b), instead of dismissing it altogether, leaving appellant still facing three felony charges, appellant would nevertheless have given up his right to a trial by jury. This assumption exceeds those limits within which this court must function. As the court pointed out in *Mancheno,* more is at stake in the context of a broken plea agreement "than the liberty of the defendant or the length of his term. 'At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice . . . .' [Citations.]" (*People* v. *Mancheno, supra,* 32 Cal.3d at p. 866.) As the court stated at page 860: "The Supreme Court has thus recognized that due process applies not only to the procedure of accepting the plea (see *Boykin* v. *Alabama* (1969) 395 U.S. 238 . . . ), but that the requirements of due process attach also to implementation of the bargain itself. It necessarily follows that violation of the bargain by an officer of the state raises a constitutional right to some remedy. [Citations.]"

This case is an appropriate one for specific enforcement of the agreement, since by reversing appellant's conviction on the third count and ordering that that count be dismissed and not refiled or retried, this court affords appellant and the prosecution both the benefits and the burdens to which they agreed when appellant gave up his right to a jury trial in exchange for the prosecution's dismissal of count III. Granted only a clear abuse of discretion justifies reversing a trial court's permission to amend an information; however, this is not simply a case of an amendment at the time of trial. This is, rather, a case of an amendment which circumvents an agreement entered into by appellant, presumably in good faith and in reliance upon the prosecutor's representation that the trial would proceed on only two charged counts. Under these circumstances, the traditional criteria for permitting such an amendment are inapplicable, because it is not enough to say appellant was not surprised by the amendment, that he had knowledge of the charges, or

that the charges were supported by evidence at the preliminary hearing. All this may be true, but the trial court cannot ignore the fact that appellant has given up a significant constitutional right in apparent reliance upon the prosecutor's agreement. Permitting the prosecution to amend and to effectively avoid its agreement does, under these circumstances, constitute an abuse of discretion.

We therefore conclude that not only must appellant's conviction on count III be reversed, but this court must order that charge dismissed so that appellant cannot be retried for alleged violation of section 453, subdivision (b), possession of a firebomb.

Having reached this conclusion, we need not determine whether retrial would be violative of state and federal constitutional prohibitions against double jeopardy and the statutory bar against multiple prosecutions.

Appellant's conviction on count III is reversed with prejudice. In all other respects the judgment is affirmed.

Best, Acting P. J., and Ballantyne, J., concurred.