## STATE OF CONNECTICUT *v.* MICHAEL D. WILLIAMS
### (13063)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued September 30—decision released December 8, 1987

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Mitchell Brody,* deputy assistant state's attorney, with whom, on the brief, was *Edward Ricciardi,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issues on this appeal are the validity of the defendant's waiver of a trial by jury and the constitutionality of General Statutes § 53a-167a,[1] which proscribes interfering with a police officer. The trial court found the defendant, Michael D. Williams, guilty on both counts of a substitute information charging him with burglary in the second degree in violation of General Statutes § 53a-102[2] and interfering with an officer by resisting arrest in violation of General Statutes § 53a-167a. He appeals from the ensuing judgment sentencing him to a term of imprisonment of seven years and four months followed by three years of probation. We find no reversible error.

The trial court could reasonably have found the following facts: On March 24, 1984, between 8:30 and 9:30 p.m., the defendant entered a house in Waterbury where the victim was visiting with friends. The defendant was looking for a buyer for his tape player, for which he wanted $40. The victim agreed to buy the tape player and asked the defendant to accompany her to her home on North Main Street to get the money. Upon arrival, while the defendant was in the bathroom, the victim got the money from her bedroom, where it had been hidden under a mattress. After receiving the money in exchange for the tape player, the defendant departed.

Between 3:30 and 4 a.m. the following morning, the victim was woken by the sound of scraping metal and, from her bed, saw an individual leaning over the table

[1] "[General Statutes] Sec. 53a-167a. INTERFERING WITH AN OFFICER: CLASS A MISDEMEANOR. (a) A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

[2] "[General Statutes] Sec. 53a-102. BURGLARY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of burglary in the second degree when he enters or remains unlawfully in a dwelling at night with intent to commit a crime therein."

in her partially illuminated kitchen. When she screamed, the intruder turned to face her. She observed a black man wearing a blue jacket, gray pants, a lightly colored hat and sunshades. The victim called the police and gave them a description of the intruder. When the police arrived, they discovered the kitchen door open, and its lock on the floor along with wooden splinters.

In response to this burglary, the police broadcast a description of the intruder's race, height and clothing. Having heard the broadcast, Patrolmen Nicholas Giordano and Renzo Anzalone stopped the defendant on East Farm Street because he appeared to match the description. Giordano so informed the defendant, told him he could not leave, and asked him to wait in the police car until another officer arrived for a further identification. The defendant refused to comply with Giordano's request. Increasingly "out of control," he started to swear at the police officers and, in a crescendo, to protest his detention. Observing that the noise had attracted onlookers, the patrolmen decided that the defendant was causing a disturbance and arrested him for breach of the peace. Following standard police procedures, they attempted to handcuff the defendant but he had become "totally out of control" and had to be forcibly "subdued."

Having been notified of the defendant's detention, Patrolman Douglas Moran, who had gone to the victim's house in response to her call, brought her to East Farm Street where she identified the defendant as the intruder. Although the victim did not immediately recognize the defendant as the man who had sold her the tape player, she called the police later that day to apprise them of that fact.

On this basis, the trial court concluded that the defendant had been proven guilty of burglary in the second degree, in violation of General Statutes

§ 53a-102 (a), because the defendant had entered the victim's house, during the night, with the intention of committing a crime therein. In view of the police officers' testimony that the defendant "had to be subdued when he learned that someone was on the way," the court also found the defendant guilty of interfering with an officer by resisting arrest in violation of General Statutes § 53a-167a (a).

On appeal from the judgment against him, the defendant has raised seven claims of error. He claims that the trial court erred in: (1) accepting his waiver of a jury trial under the original information; (2) not giving him the opportunity to reconsider his waiver of a jury trial with regard to a substitute information charging him with second degree burglary; (3) convicting him of interfering with an officer under General Statutes § 53a-167a, which is unconstitutionally vague or overbroad; (4) finding sufficient evidence of physical resistance to convict under General Statutes § 53a-167a; (5) admitting out-of-court and in-court identifications, with respect to the burglary, that were the fruit of his illegal arrest for breach of the peace; (6) convicting him of a violation of General Statutes § 53a-167a despite his allegation that his resistance to the illegal arrest was justified; and (7) sentencing him without a continuance to permit inquiry into a delayed presentence investigation report and in reliance on inaccurate information. We find no reversible error.

I

Before reaching the merits of the defendant's claims of error, we must address the state's contention that the defendant failed to raise most of these claims in a timely fashion at his trial. The defendant acknowledges this procedural infirmity with regard to his claims regarding the validity of his waiver of a jury trial, the constitutionality of General Statutes § 53a-167a, the

admissibility of the identifications as the fruit of an illegal arrest for breach of the peace, and the improper reliance on inaccurate information at sentencing.

While we ordinarily need not review issues raised for the first time on appeal, we have long held that appellate consideration is proper for claims that implicate fundamental constitutional rights and a fair trial, and are adequately supported by the record. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). The state concedes that the issues belatedly raised by the defendant facially implicate rights guaranteed by the sixth, first, fourth and fourteenth amendments to the United States constitution as well as article first, §§ 8, 19, 15, and 7 of the Connecticut constitution. These issues therefore merit appellate review to determine whether the defendant's constitutional rights have been violated. See, e.g., *State* v. *McIver,* 201 Conn. 559, 563, 518 A.2d 1368 (1986) (reviewing the admissibility of statements that were arguably the fruit of an illegal arrest); *State* v. *Marino,* 190 Conn. 639, 642, 462 A.2d 1021 (1983) (reviewing the validity of a waiver of the right to a jury trial).

## II

The defendant has raised two claims of error challenging the validity of his waiver of his constitutional right to a jury trial. His first claim is that the trial court erred in concluding that he had knowingly and intelligently elected a court trial in response to the original information charging him with first degree burglary and interfering with an officer by resisting arrest. His second claim is that he was denied the right to a jury trial on the substituted charge of burglary in the second degree. Neither of these claims was raised at trial. We find no error.

The principles that govern waiver of a right to a jury trial are not in dispute. "The right to a jury trial in a

criminal case is among those constitutional rights which are related to the procedure for the determination of guilt or innocence. The standard for an effective waiver of such a right is that it must be 'knowing and intelligent,' as well as voluntary. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 237, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Patton* v. *United States,* 281 U.S. 276, 312, 50 S. Ct. 253, 74 L. Ed. 854 (1930)." *State* v. *Marino,* supra, 643; see *State* v. *Shockley,* 188 Conn. 697, 705–707, 453 A.2d 441 (1982). Relying on the standard articulated in *Johnson* v. *Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), we have adopted the definition of a valid waiver of a constitutional right as the intentional relinquishment or abandonment of a known right. *State* v. *Shockley,* supra, 706; *State* v. *Reed,* 174 Conn. 287, 293, 386 A.2d 243 (1978). This strict standard precludes a court from presuming a waiver of the right to a trial by jury from a silent record. *State* v. *Shockley,* supra, 707; see *Boykin* v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). In determining whether this strict standard has been met, a court must inquire into the totality of the circumstances of each case. *State* v. *Shockley,* supra; see *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 278, 63 S. Ct. 236, 87 L. Ed. 268 (1942). When such a claim is first raised on appeal, our focus is on compliance with these constitutional requirements rather than on observance of analogous procedural rules prescribed by statute or by the Practice Book. General Statutes § 54-82b; Practice Book §§ 839, 4185; *State* v. *Marino,* supra; *State* v. *Shockley,* supra, 713.

Applying these principles in this case, we note, with respect to the propriety of the defendant's initial waiver of his right to a jury trial, that the record discloses an extensive colloquy between the trial court and the defendant. At a pretrial hearing, the defendant informed the court that he wished to withdraw an

earlier election of a jury trial and to have a court trial instead. When the defendant gave his desire for an early trial as his reason for his change of election, the court refused to accede to this request. The court explained to the defendant that he was entitled to a speedy trial as well as to a jury trial and that the court would not be able to give the defendant a definite trial date for either a court trial or a jury trial. After a further consultation between the defendant and his counsel, counsel informed the court that the defendant continued to desire to elect a court trial. The trial court reiterated its disinclination to permit a waiver of a jury trial that was based on the "speculation" that a court trial would occur sooner than a jury trial. The defendant himself then responded that the reason for his election was his belief that the court would consider the evidence more closely than a jury, whereupon the court remarked that that was a "good reason" and subsequently accepted the defendant's waiver of a jury trial.

The defendant contends that, in order to ensure that his waiver was knowing and intelligent, the court should have explored further the defendant's reasons for waiving a jury trial before accepting his election of a court trial. The record is deficient, according to the defendant, because the court should have recognized the likelihood that the defendant's second reason for electing a court trial was merely pretextual. At the very least, the defendant maintains, the court should have considered the possibility that his offer of two conflicting reasons for his waiver was evidence that he did not knowingly and intelligently waive his rights. We are not persuaded.

The record of waiver in this case demonstrates, in our view, a defendant who vigorously and knowingly persisted in articulating a preference for a court trial. The fact that his first reason for such a preference was unpersuasive does not require a court to discount a sec-

ond reason that was, on its face, entirely appropriate. That the defendant, after consultation with counsel, offered a different, but not inconsistent, reason for electing a court trial does not of itself call into question the defendant's ability to understand the implications of his waiver. To the contrary, such rethinking suggests that the defendant understood the explanations that he received from the court and from his counsel. While the presence of counsel does not automatically guarantee that a defendant's constitutional interests and rights will be protected, it is a " 'factor to be considered in determining the question of the need for or sufficiency of any admonition given by the court.' " *State* v. *Shockley,* supra, 708, quoting *Neller* v. *State,* 79 N.M. 528, 534, 445 P.2d 949 (1968). The defendant was not a newcomer to the criminal justice system. See *State* v. *Williams,* 202 Conn. 349, 521 A.2d 150 (1987). Finally, there is no evidence to suggest that the defendant was not of ordinary intelligence or educational background. See *State* v. *Crump,* 201 Conn. 489, 504–505, 518 A.2d 378 (1986); *State* v. *Marino,* supra, 646. In the circumstances of this case, we therefore conclude that the defendant knowingly and intelligently waived his right to a trial by jury.

The defendant next claims that, whatever the validity of his election of a court trial on the original information, his right to a jury trial revived when the state substituted a new information charging him with burglary in the second degree under General Statutes § 53a-102 rather than burglary in the first degree under General Statutes § 53a-101.[3] Because burglary in the second degree requires proof that the burglary occurred at night, that crime is not a lesser included offense of

---

[3] "[General Statutes] Sec. 53a-101. BURGLARY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dan-

burglary in the first degree. Despite the absence of formal proceedings putting the defendant to a new plea, his trial proceeded without objection on the substitute information.

This court has not previously decided under what circumstances a defendant, subsequent to the rendition of an adverse judgment, may complain about the failure to advise him of his right to a jury trial on a substitute information charging him with a lesser offense. In *State v. Marino,* supra, 643, citing *State v. Shockley,* supra, 713, we noted that "[a] mere deviation from [the procedures prescribed by General Statutes § 54-82b and Practice Book § 839] would not in itself constitute a claim of constitutional error eligible for appellate review sufficient to overcome our general prohibition against raising on appeal issues never presented to the trial court." In *State v. Shockley,* supra, we had concluded that there was no constitutional error, given a valid initial waiver, when a defendant on a substitute information, in disregard of the requirements of the statute and the Practice Book, was advised by a court clerk, rather than by a judge, of his right to a trial by jury. We conclude that the failure to observe the requirements of the statute and the Practice Book in the present circumstances is similarly not of constitutional dimension. This conclusion is reinforced by the defendant's omission, even on appeal, of a fully reasoned constitutional complaint regarding the trial

gerous instrument, or (2) in the course of committing the offense, he intentionally, knowingly or recklessly inflicts or attempts to inflict bodily injury on anyone.

"(b) An act shall be deemed 'in the course of committing' the offense if it occurs in an attempt to commit the offense or flight after the attempt or commission.

"(c) Burglary in the first degree is a class B felony provided any person found guilty under subdivision (1) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

court's failure to put him to plea on the substitute information. Cf. *State* v. *Jones,* 166 Conn. 620, 628–29, 353 A.2d 764 (1974); *State* v. *Lorusso,* 151 Conn. 189, 191–92, 195 A.2d 429 (1963). As we noted in *Shockley,* the better practice would, of course, have been to have the judge conduct a new inquiry to determine whether the substituted charge altered the defendant's election of a court trial. Nonetheless, as a constitutional matter, "a valid waiver may still be found in a given case if the record affirmatively discloses that the defendant intelligently and knowingly did waive his right to a trial by jury." *State* v. *Shockley,* supra, 711.

The issue before us, therefore, is whether, in light of the totality of the circumstances, the state has proven the validity of the defendant's waiver of a jury trial with regard to the crime charged in the substitute information. The defendant argues that his initial waiver of a jury trial did not extend to the substituted charge because of two differences between burglary in the first degree and burglary in the second degree. Only burglary in the second degree requires proof that the offense occurred at night. Only burglary in the first degree requires proof of the use of a weapon. Awareness of these differences, according to the defendant, might have led him to reconsider his election of a court trial. We are not persuaded.

The reason given by the defendant for his election of a court trial was that he believed the court would consider the evidence more closely than would a jury. Nothing on the record suggests that the time of the occurrence of the crime played any role whatsoever in the defendant's election. It would similarly be speculative to attribute special importance to the deletion of the use of a weapon as an element of the lesser crime charged. The fact that the substitute information charged a less serious crime, and hence exposed the defendant to lesser sanctions, does not undermine the

validity of his election. For crimes that stand in the technical relationship of lesser included crimes, no new election would have been required because a defendant is deemed to be on notice that a charge of the more serious offense encompasses the lesser offenses. See *State* v. *Martin,* 187 Conn. 216, 219, 445 A.2d 585 (1982); *State* v. *Jacobowitz,* 182 Conn. 585, 591, 438 A.2d 792 (1981). In the circumstances of this case, we see no distinction between a substitute information charging a lesser crime and one charging a lesser included offense.[4]

The state urges us to consider criminal proceedings as a single process during which a waiver of the right to a jury trial automatically remains in force for all substituted charges. We are unwilling to adopt so broad a rule. We are necessarily engaged in a fact-specific inquiry when we determine whether, in a given case, the record discloses an intelligent and knowing waiver of a right to a jury trial. On the facts of this case, given the defendant's failure to make a timely objection at trial, we hold that his waiver of a jury trial encompassed

---

[4] The cases from other jurisdictions that the defendant cites do not suggest otherwise. In *People* v. *Sanders,* 191 Cal. App. 3d 79, 236 Cal. Rptr. 197, 199 (1987), the court held that the defendant's right to a jury trial was violated when the defendant, after having waived his right to a jury trial in exchange for the dismissal of one count of the information, was convicted on a substitute information containing the same count that had earlier been dropped. *Sanders,* unlike the case before us, involved an information to which a count had been added rather than a substituted count. *People* v. *Walker,* 170 Cal. App. 2d 159, 338 P.2d 536 (1959), is likewise inapposite as it involved the substitution of a more serious charge for the charge to which the defendant had already waived a jury trial, rather than a lesser charge.

The defendant additionally places emphasis on the trial court's comment to the defendant during the initial waiver colloquy that, "You won't be able to switch back at a later time to a trial by jury." The context of the comment reveals that it was intended to apply only to the initial information upon which the defendant was electing a court trial and to the time that the case was ready to go to trial. Defense counsel, who was present throughout, had the opportunity to dispel any confusion arising from the statement.

not only the original charge of first degree burglary under General Statutes § 53a-101 but also the substituted charge of burglary in the second degree under General Statutes § 53a-102. On this record, the trial court did not err in conducting a court trial rather than a jury trial to determine the defendant's guilt.

### III

The defendant challenges his conviction for interfering with an officer in violation of General Statutes § 53a-167a on several grounds implicating the first and fourteenth amendments to the United States constitution. Section 53a-167a provides: "INTERFERING WITH AN OFFICER: CLASS A MISDEMEANOR. (a) A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties." The defendant maintains that (1) the state failed to adduce sufficient evidence that he physically interfered with a police officer, and (2) even if his conduct can be found to have constituted physical interference, § 53a-167a is on its face unconstitutionally vague or overbroad. We are unpersuaded by either of these claims of error.

At the outset, it is helpful to review the circumstances surrounding the defendant's detention. According to Patrolman Giordano's testimony, he and Patrolman Anzalone encountered and detained the defendant on a street not far from the victim's house approximately one hour after the burglary had occurred. When they stopped the defendant, they informed him that he fit the description of a burglary suspect and would have to wait until another officer arrived for an identification. We note that the defendant does not challenge his detention by the police on the ground that it exceeded the permissible limits of an investigative stop under *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The temporal and spatial proximity

of the detention to the crime, as well as the defendant's physical conformity with the broadcast description warranted detaining the defendant temporarily to allow the victim an opportunity to identify him as the intruder in her apartment. See *State* v. *Aillon,* 202 Conn. 385, 398–401, 521 A.2d 555 (1987); *State* v. *Aversa,* 197 Conn. 685, 691–92, 501 A.2d 370 (1985). This evidence establishes that the police were acting lawfully in originally detaining the defendant. Giordano further testified that when the defendant's loud protestations against his detention attracted onlookers, the patrolmen decided to arrest him for breach of the peace. The defendant reacted with such vehemence that the police had to subdue him forcibly. This response on the part of the defendant led to his subsequent conviction for interfering with an officer by resisting arrest.

A

We address first the defendant's evidentiary challenge to his conviction under § 53a-167a, because our conclusion on this claim of error will provide a frame of reference for consideration of the defendant's constitutional claims. The defendant contends that he was in fact convicted for exercising his right of free speech because there was insufficient evidence that he had physically resisted arrest. The state maintains, and we agree, that it proved, beyond a reasonable doubt, that the defendant's resistance to the arrest was physical.

The standard for evaluating a claim based on insufficiency of the evidence is well established: " 'This court will construe the evidence in the light most favorable to sustaining the trial court's verdict and will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom . . . .' " *State* v. *Vincent,* 194 Conn. 198, 206, 479 A.2d 237 (1984); *State* v. *D'Antuono,* 186 Conn. 414, 421, 441 A.2d 846 (1982); *State* v. *Perez,*

182 Conn. 603, 606, 438 A.2d 1149 (1981). Our role is to determine "whether the facts supported reasonable inferences allowing the trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *State* v. *Vincent,* supra; *State* v. *Haddad,* 189 Conn. 383, 387–90, 456 A.2d 316 (1983).

Applying this standard to the record before us, we conclude that it reasonably supports the trial court's conclusion that the defendant was guilty beyond a reasonable doubt of interfering with an officer by resisting arrest. The defendant maintains that Giordano's testimony that, upon being informed of his arrest for breach of the peace, the defendant had to be forcefully subdued does not support the inference that the defendant physically resisted arrest. We find this contention untenable on its face. The patrolmen's resort to force, coupled with the testimony that the defendant had become "totally out of control," warrants the conclusion that the defendant was struggling to avoid being handcuffed. Interpreting the evidence most favorably towards the prosecution, we conclude that the trial court could reasonably have found beyond a reasonable doubt that the defendant physically resisted arrest.

## B

We turn next to the defendant's vagueness challenge to § 53a-167a. Under the requirements of due process of law mandated by our federal and state constitutions, " 'a penal statute must be sufficiently definite to enable a person to know what conduct he must avoid.' " *State* v. *Proto,* 203 Conn. 682, 696, 526 A.2d 1297 (1987); *State* v. *Pickering,* 180 Conn. 54, 59–60, 428 A.2d 322 (1980); see *Buckley* v. *Valeo,* 424 U.S. 1, 77, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976); *State* v. *Eason,* 192 Conn. 37, 46, 470 A.2d 688 (1984). "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must

necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926); *State* v. *Eason,* supra; *State* v. *Pickering,* supra, 60.

Where a vague statute implicates the right of free speech, it tends to inhibit the exercise of that right. "Ambiguous meanings cause citizens to ' "steer far wider of the unlawful zone" . . . than if the boundaries of the forbidden areas were clearly marked.' " *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 n.6, 102 S. Ct. 1186, 71 L. Ed. 2d 362, reh. denied, 456 U.S. 950, 102 S. Ct. 2023, 72 L. Ed. 2d 476 (1982), quoting *Baggett* v. *Bullitt,* 377 U.S. 360, 372, 84 S. Ct. 1316, 12 L. Ed. 2d 377 (1964). " 'Due to this "chilling effect" which vague statutes can exert on first amendment liberties . . . when those freedoms are at stake, the statute's constitutionality is tested for vagueness on its face.' " *State* v. *Proto,* supra, 697; *State* v. *Pickering,* supra, 58 n.3; see *Grayned* v. *Rockford,* 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). Thus, the defendant in this case " 'may challenge the validity of a statute's application to marginal situations even though [his] own conduct may clearly fall within the statute's proscriptions.' " *State* v. *Proto,* supra; *State* v. *Pickering,* supra; see *Aptheker* v. *Secretary of State,* 378 U.S. 500, 517, 84 S. Ct. 1659, 12 L. Ed. 2d 992 (1964); *NAACP* v. *Button,* 371 U.S. 415, 432–33, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963).[5]

---

[5] The state relies on *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982), to argue that to challenge a statute on vagueness grounds, a defendant "must demonstrate that the law is impermissibly vague in all of its applications." In that case, however, the challenged statute unlike the statute before us did not directly implicate the right of free speech. See id., 495 n.7, 495–97.

Evaluating § 53a-167a on its face, we conclude that the statute is not unconstitutionally vague. By its own terms, the statue defines "interfering" to include obstruction, resistance, hindrance, or endangerment. Accordingly, a reasonable interpretation of the statute confines its scope to conduct that amounts to meddling in or hampering the activities of the police in the performance of their duties. The statute has been so construed by the Appellate Court. *State* v. *Beckenbach,* 1 Conn. App. 669, 679, 476 A.2d 591 (1984), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985); see also *State* v. *Biller,* 5 Conn. App. 616, 621, 501 A.2d 1218 (1985), cert. denied, 199 Conn. 803, 506 A.2d 146 (1986). Furthermore, the conduct that the statute proscribes is limited to action intended to obstruct the police in the performance of their duties. *State* v. *Beckenbach,* supra; cf. *State* v. *Cavallo,* 200 Conn. 664, 668–69, 513 A.2d 646 (1986). In light of these facially reasonable constraints on the scope of § 53a-167a, the statute, on its face, meets the constitutional requirements of fair notice.

Without contesting the reasonableness of this analysis of the conduct proscribed by § 53a-167a, the defendant advances two reasons why we should find the statute unconstitutionally vague. He maintains that the statute is impermissibly ambiguous in failing to make clear whether it governs verbal as well as physical conduct and, if it encompasses speech, in failing to provide standards for the police and the courts. We are not persuaded.

We interpret § 53a-167a to cover some acts of verbal resistance as well as acts of physical resistance. Although the statute does not explicitly define the nature of the acts that fall within its ambit, "resistance," as commonly understood, encompasses both verbal and physical conduct. Cf. *State* v. *Cavallo,* supra, 668. The inclusion of verbal conduct does not, per se,

leave the statute so open-ended that it lends itself to arbitrary enforcement. The statute's requirement of intent limits its application to verbal conduct intended to interfere with a police officer and excludes situations in which a defendant merely questions a police officer's authority or protests his or her action. We conclude, therefore, that General Statutes § 53a-167a is not unconstitutionally vague.

## C

The defendant contends, in the alternative, that General Statutes § 53a-167a is fatally overbroad. "A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned* v. *Rockford,* supra, 114. A single impermissible application of a statute, however, will not be sufficient to invalidate the statute on its face; rather, to be invalid, a statute must reach " 'a substantial amount of constitutionally protected conduct.' " *Houston* v. *Hill,* 482 U.S. 451, 458, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987); *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.,* supra, 494; see *State* v. *Proto,* supra, 707.

In *Houston* v. *Hill,* supra, the United States Supreme Court struck down on overbreadth grounds a Houston ordinance that made it unlawful " 'for any person to assault, strike or in any manner oppose, molest, abuse, or interrupt any policeman in the execution of his duty. . . .' " Id., 461. Among the factors it considered controlling were the broad sweep of the statute's language, which prohibited interfering with a police officer "in any manner," and the statute's resistance to being construed to proscribe only "fighting words." Id., 462–63. The record in *Houston* v. *Hill,* in addition, contained ample evidence that the statute had been applied in many instances to persons who were doing nothing more than talking or arguing with the police, and thus

demonstrated that the ordinance had a significant potential for unconstitutional application. Id., 457–58 and nn.5 and 6.

The record in the case before us, in contrast, discloses that § 53a-167a creates no such danger. The circumstances surrounding the defendant's original detention reveal that the police were acting lawfully within the scope of their duties. The defendant has provided no evidence that in other instances the statute has been applied to conduct arguably falling within the protection afforded by the first amendment to the United States constitution or article first, § 5, of the Connecticut constitution.

Moreover, unlike the United States Supreme Court, this court has the power to construe state statutes narrowly to comport with the constitutional right of free speech. See *Moscone* v. *Manson,* 185 Conn. 124, 130–31, 440 A.2d 848 (1981); *Engle* v. *Personnel Appeal Board,* 175 Conn. 127, 134, 394 A.2d 731 (1978); see also *Grayned* v. *Rockford,* supra, 110; *Shuttleworth* v. *Birmingham,* 382 U.S. 87, 91, 86 S. Ct. 211, 15 L. Ed. 2d 176 (1965). To avoid the risk of constitutional infirmity, we construe § 53a-167a to proscribe only physical conduct and fighting words that " ' "by their very utterance inflict injury or tend to incite an immediate breach of the peace." ' "[6] *Houston* v. *Hill,* supra, 461–62; *Lewis* v. *New Orleans,* 415 U.S. 130, 133, 94 S. Ct. 970, 39 L. Ed. 2d 214 (1974); *Gooding* v. *Wilson,* 405 U.S. 518, 525, 92 S. Ct. 1103, 31 L. Ed. 2d 408 (1972); see *Chaplinsky* v. *New Hampshire,* 315 U.S. 568, 62 S. Ct. 766, 86 L. Ed. 1031 (1942). By its terms, § 53a-167a is directed only at conduct that interferes with police and firemen in the performance of their

[6] This narrow construction is required by the constitutional right of free speech even though a broader construction of "verbal conduct intended to interfere with a police officer" to which we referred in our earlier discussion of vagueness would constitutionally suffice for the latter purpose.

duties.[7] As we have said earlier, it encompasses only
interference that is intentional. Cf. *State* v. *Proto,*
supra, 707. This limiting construction, which we deem
to be fully consistent with the intent of the legislature,
preserves the statute's purpose to proscribe "core
criminal conduct" that is not constitutionally protected.
Cf. *Houston* v. *Hill,* supra, 468. We conclude that the
statute, so construed, is not impermissibly overbroad.

## IV

We turn next to the defendant's claim that his arrest
for breach of the peace under General Statutes
§ 53a-181 was illegal. From this premise, he argues that
the trial court erroneously admitted into evidence the
victim's out-of-court and in-court identifications of him,
which should have been excluded as the fruit of his ille-
gal arrest. Furthermore, the defendant maintains that,
because his arrest was illegal, his resistance was law-
ful and did not fall within the proscription of General
Statutes § 53a-167a.[8] Since we disagree with the prem-
ise, we need not address the specific claims that flow
therefrom.

The legality of the defendant's arrest depends upon
whether the police had probable cause to believe that
the crime of breach of the peace had been committed
and that the defendant had committed it. See *State* v.

---

[7] Accordingly, the "fighting words" exception may "require a narrower
application in cases involving words addressed to a police officer, because
'a properly trained officer may reasonably be expected to "exercise a higher
degree of restraint" than the average citizen, and thus be less likely to
respond belligerently to "fighting words." ' " *Houston* v. *Hill,* 482 U.S.
451, 462, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987), quoting *Lewis* v. *New
Orleans,* 415 U.S. 130, 135, 94 S. Ct. 970, 39 L. Ed. 2d 214 (1974) (Powell,
J., concurring).

[8] In support of this claim, the defendant contends that General Statutes
§ 53a-23, which provides that "[a] person is not justified in using physical
force to resist an arrest by a reasonably identifiable peace officer," does
not proscribe nonforceful resistance. We do not reach this issue.

*Asherman,* 193 Conn. 695, 705, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985); *State* v. *Guertin,* 190 Conn. 440, 446, 461 A.2d 963 (1983). The defendant concedes that, if there was probable cause to believe that a breach of the peace was being committed, then it was the defendant who committed it. He focuses, therefore, on the question of whether the record supports a finding that the police had a reasonable basis for their belief that a breach of the peace had occurred.

Relying on *State* v. *Nelson,* 38 Conn. Sup. 349, 353, 448 A.2d 214 (1982), which construed § 53a-181 (a) (5) narrowly to conform with the right of free speech, the defendant argues that there was insufficient evidence to show that his "swearing" and "getting loud" amounted to "fighting words" or words having sexually offensive connotations within the scope of § 53a-181 (a) (5). See *State* v. *Nelson,* supra, 352–53. The relevant testimony is that of the arresting officer, Giordano, who stated that he relied on a number of circumstances that led to the arrest: The defendant was "getting loud" and "swearing" at the police officers; it was four o'clock in the morning; people were watching the incident from across the street; and the defendant was "creating a disturbance."

We are persuaded that, in these circumstances, Giordano and Anzalone had probable cause to arrest the defendant. The defendant's argument of insufficiency of the evidence would have greater persuasiveness if the issue were his guilt or innocence of the crime of breach of the peace. The standard for sufficiency of the evidence to convict is higher than the standard that governs a police officer's determination of probable cause. *State* v. *Dennis,* 189 Conn. 429, 431, 456 A.2d 333 (1983); see *Adams* v. *Williams,* 407 U.S. 143, 148–49, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). Applying the lesser standard that is appropriate for present

purposes, we conclude that the state has established a reasonable foundation for the arresting officers' belief that the defendant's loud protestations and swearing were "fighting words" in violation of § 53a-181 (a) (5). The record therefore establishes the legality of the defendant's arrest.

V

The defendant's final claims involve improprieties that occurred at his sentencing. The defendant claims that the trial court erred in failing to delay sentencing for the twenty-four hour period mandated by Practice Book § 915 when it was discovered that defense counsel had failed to receive the presentence investigation (PSI) report in a timely fashion. Furthermore, the defendant argues that, in sentencing the defendant, the trial court relied on inaccurate information about the defendant's employment history and about the circumstances surrounding the defendant's previous conviction for robbery. We find no reversible error.

Neither party disputes the facts underlying the first claim. Defense counsel received the PSI report on the morning of the date set for sentencing. Upon examining the report, defense counsel discovered two inaccuracies. The report omitted the fact that the defendant had been gainfully employed at the time of the burglary. In addition, the report referred to a knife found at the victim's apartment, in disregard of proceedings prior to trial in which the knife had been excluded from evidence because the state had been unable to connect it with the defendant. On the basis of this misinformation, defense counsel unsuccessfully sought a continuance. The court instead stated that, for the purposes of sentencing, it would accept defense counsel's representations regarding the inaccuracies.

The trial court's ruling did not conform with the requirements of Practice Book § 915. That section

states that the PSI report is to be provided to the defendant or his counsel "in sufficient time . . . to prepare adequately for the sentencing hearing, and in any event, no less than twenty-four hours prior to the date of the sentencing. Upon request of the defendant, the sentencing hearing shall be continued for a reasonable time if the judicial authority finds that the defendant or his counsel did not receive the presentence investigation report within such time." As with other similar language in other sections of the Practice Book, the requirement of § 915 that, in the absence of a timely PSI report, "the sentencing hearing *shall* be continued" (emphasis added) was intended to establish a procedural rule that is mandatory and not directory. See *State* v. *Cook,* 183 Conn. 520, 522–23, 441 A.2d 41 (1981). We note, furthermore, that the defendant's entitlement to a twenty-four hour continuance does not depend upon his ability immediately to detect inaccuracies on the face of the PSI report. Such a limitation would defeat the purpose of § 915, which is designed to afford a defendant a reasonable period of time to uncover errors or omissions that might not be apparent from an initial reading of the report.

We conclude, however, that under the circumstances of this case, the trial court's error was harmless. To this day, the defendant has pointed to no evidence either in or dehors the trial record to substantiate his allegation that a twenty-four hour continuance would have enabled him to uncover information that would have resulted in the trial court's imposing a different sentence. The defendant has consequently failed to show that he was prejudiced by the trial court's erroneous ruling.

The defendant's final claim is that the trial court, in sentencing the defendant, unfairly relied on inaccurate information. According to the defendant, the trial court, despite being corrected by the defendant, con-

tinued to assume erroneously that the defendant was unemployed at the time of his commission of the underlying offense. In support of this claim, the defendant alludes to a statement by the court prior to sentencing the defendant in which it admonished the defendant that, "I think you ought to get a job and stay with it, there is a lot more profit in that than what you have been doing." In addition, the defendant contends that the court relied on a misrepresentation in the PSI report regarding the severity of an injury to the victim in an earlier incident that had resulted in the defendant's previous conviction for robbery. The trial court's reliance on these inaccuracies, in the defendant's view, warrants our setting aside his sentence and remanding the case for a new sentencing hearing. We are not persuaded.

The record clearly discloses that the central concern of the trial court in sentencing the defendant was the defendant's history of violent conduct toward women. The trial court stated, "[W]hat bothers me is that your client has a history of attacking and robbing women." The trial court, moreover, noted the defendant's failure to learn any lessons from his prior confinement. Reviewing the record as a whole, we conclude that the trial court did not rely on the inaccuracies alleged by the defendant.

There is no error.

In this opinion the other justices concurred.